Docket No. 105368.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JUAN
C. HERNANDEZ, Appellant.

*Opinion filed September 18, 2008.*

JUSTICE BURKE delivered the judgment of the court, with
opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride,
Garman, and Karmeier concurred in the judgment and opinion.

## OPINION

In this case, we must determine whether a criminal defense
attorney labors under a *per se* conflict of interest when he or she also
represents the alleged victim of defendant's offense, but where the
attorney has had no contact with the alleged victim for several years.
The circuit court of Cook County and the appellate court found that
no *per se* conflict existed. Nos. 1–04–2776, 1–06–2052 cons.
(unpublished order under Supreme Court Rule 23). For the reasons
that follow, we reverse the decisions of the courts below, reverse
defendant's conviction, and remand this matter for proceedings
consistent with this decision.

## BACKGROUND

In 1992, defendant, Juan Hernandez, was arrested on federal and state drug charges. The narcotics in defendant's possession were confiscated. Defendant served 30 months at Oxford Federal Prison Camp and 3 months at Shawnee Correctional Center. While in custody, defendant met Richard Martinez and Ricardo Diaz. Following their release from prison, the three remained in contact.

In August of 1999, defendant was approached by Jaime Cepeda. Cepeda claimed defendant owed his "superior" $50,000 for the narcotics confiscated in 1992, and that he was sent to collect on the debt. In August, Cepeda went to defendant's home on at least four occasions and threatened to kill defendant and his family if defendant did not pay the money owed. Cepeda also went to defendant's workplace and threatened him.

In September of 1999, Cepeda kidnapped defendant and held him for three weeks. During that time, defendant was locked in the basement at Cepeda's house, handcuffed, and repeatedly beaten. On September 28, 1999, Cepeda, armed with a gun, took defendant back to defendant's home and told defendant's wife this would be the last time she would see defendant if he did not come up with the money. Cepeda again threatened to kill defendant's family.

Cepeda and his two associates took defendant back to Cepeda's house. When they arrived at Cepeda's home, police officers were waiting outside. The police had responded to a report of a bound and gagged man standing in the street in front of Cepeda's home. Seeing the police, the four men exited Cepeda's car and ran toward Cepeda's home. Cepeda ran toward the back of the home. As he did so, he discarded a bag containing two loaded handguns. The bag was recovered by the police and Cepeda was arrested for unlawful use of a weapon.

During the same time frame, defendant and Diaz came under investigation by the Drug Enforcement Administration (DEA) and Illinois State Police for drug trafficking. Martinez had agreed to become a confidential informant and was instructed to contact both defendant and Diaz to purchase cocaine. Martinez initially made contact with Diaz, who told him defendant wanted to deal directly with Martinez. Defendant contacted Martinez on February 10, 2000.

Because of defendant's encounters with Cepeda, defendant told Martinez he wanted Cepeda killed. In furtherance of this plot, defendant met with Martinez and his "partner," an undercover special agent with the Illinois State Police, on February 14. At that time, defendant described Cepeda to them, showed them the location of Cepeda's house, and described Cepeda's car. Defendant agreed to reduce the price on their future drug purchases by $1,000 if Martinez killed Cepeda. It was arranged that defendant would sell cocaine to Martinez on February 23. Defendant and Martinez spoke several times between February 14 and February 23 about the sale, but due to a disagreement about certain details of the purchase, the February 23 transaction never took place.

The investigation of defendant was placed on hold until May 1, 2000, when defendant again contacted Martinez about selling drugs. At that time and in subsequent conversations, defendant renewed the discussion regarding the "hit" on Cepeda. Based on the conversations between Martinez and defendant after May 1, the State's Attorney obtained an order for a confidential overhear.

On May 11, defendant was captured on tape hiring Martinez to kill Cepeda in exchange for a reduced price on the purchase of cocaine. Defendant was arrested that same day. On May 31, defendant was indicted and charged with, *inter alia*, two counts of solicitation of murder for hire.

In 2003, defendant retained John DeLeon to represent him on the above charges. Unbeknownst to defendant, DeLeon had previously been retained by Cepeda to represent him in connection with the September 1999 unlawful use of a weapon charge. DeLeon continued to represent Cepeda through January 16, 2001, when a bond forfeiture warrant was issued against Cepeda for his failure to appear in court. Apparently, Cepeda had fled the country prior to January 16, 2001, and has not returned. Although DeLeon has had no contact with Cepeda since before January 16, 2001, he continues to be the attorney of record for Cepeda.

In defendant's case, Cepeda's name appeared on the State's list as a potential witness. DeLeon and Marvin Bloom, DeLeon's associate who was also involved in defendant's representation, as well as the assistant State's Attorney prosecuting defendant's case, were all aware that DeLeon represented both defendant and Cepeda.

However, neither defendant nor the circuit court was advised of the dual representation.

Following a bench trial, defendant was found guilty of solicitation to commit murder for hire. While defendant's direct appeal was pending, he filed a postconviction petition, alleging, *inter alia*, that DeLeon's dual representation, of which defendant was previously unaware, constituted a *per se* conflict of interest that denied him effective assistance of counsel. Attached to defendant's petition was DeLeon's affidavit, in which DeLeon admitted representing Cepeda. DeLeon averred: "I still considered myself to be his [Cepeda's] attorney, for if he was arrested on that warrant [bond forfeiture], as my appearance was still on file, I would still be his attorney." DeLeon further averred that, to his knowledge, neither he nor the prosecutor brought his "prior and active representation of Jaime Cepeda during my representation of Juan Hernandez" to the attention of the court or defendant.

The circuit court conducted an evidentiary hearing on defendant's postconviction petition. Marvin Bloom testified that, at some point during defendant's case, he learned DeLeon also represented Cepeda. Bloom never told defendant about the dual representation and admitted he never considered whether it created a conflict.

John DeLeon testified that he represented Cepeda in two different cases. When Cepeda failed to appear in court in 2001 and the bond forfeiture warrant was issued, DeLeon attempted to locate Cepeda, but could not. DeLeon stated that Cepeda's case remained pending on the court's call via the bond forfeiture. When questioned on direct examination as to whether he still considered himself to be Cepeda's attorney as of the present time, DeLeon responded, "Yes. If he is apprehended, I will be representing him." DeLeon reiterated that he never told defendant he represented Cepeda, nor was he aware of anyone else doing so.

On cross-examination, DeLeon testified he had not spoken to, nor seen, Cepeda since before January 2001. DeLeon confirmed that, at some point during defendant's trial, he and the assistant State's Attorney discussed the fact he represented Cepeda. The assistant State's Attorney then inquired of DeLeon as follows:

"Q. And the reason you never told him [defendant]–at least what you told me–was because you didn't feel there was a conflict of interest; is that correct?

A. I didn't think it was important to the case at the time.

Q. And you felt that there was really–you didn't think that there was a conflict of interest?

A. Well, I–I don't want to make a legal determination on whether or not there was a conflict. All I can tell you is I didn't think there was a problem.

Q. No, my question to you, sir, is *** you told me that you did not believe that there was any conflict of interest; isn't that correct?

A. That's correct.

Q. And that's why you didn't tell him; correct?

A. It just never came up in the conversation. I felt that my representation of Jaime Cepada [*sic*] was separate and apart; that whatever conversations that I had with Jaime were between me and Jaime. He was a client. I owed a loyalty to him, so I didn't reveal any conversations."

Upon further re-cross-examination, DeLeon stated that, while he was not presently going to court on Cepeda's behalf, he was still Cepeda's lawyer and was "active right now" on his behalf.

On additional redirect examination, DeLeon testified further concerning his belief that he was still Cepeda's attorney:

"Q. Mr. DeLeon, so it is clear, during any of that period of time including the time that you were defending Mr. Hernandez, if you got a call that Mr. Cepada [*sic*] had been arrested on that warrant [bond forfeiture], what did you consider would be your position with respect to Mr. Cepada [*sic*]?

A. That I was his lawyer.

Q. And would you have an obligation *** to go to court for Mr. Cepada [*sic*] had he been arrested?

A. I am sure Judge Fox would have made sure I was there. And, of course, I would have been there.

-5-

Q. And at that time if he wished or–and if you wished, you could withdraw. But up until that point, you were still his lawyer and still responsible for his case.

A. Yes."

Following the evidentiary hearing, the circuit court denied defendant's postconviction petition, finding there was no ongoing relationship between DeLeon and Cepeda for the last five years, DeLeon had had no substantial contact with Cepeda, and Cepeda had not been called as a witness at defendant's trial. Based on these facts, the trial court concluded there was no *per se* conflict. It further found no actual conflict existed and concluded defendant had received "a very good defense."

The appellate court consolidated defendant's postconviction appeal with his direct appeal and affirmed, with one justice dissenting. In connection with defendant's postconviction challenge, the majority noted that, while Cepeda was named as a witness, he was never called to testify against defendant. Moreover, DeLeon had not seen nor spoken to Cepeda in five years. Further, DeLeon's appearance was still on file only because he could not withdraw in Cepeda's absence. Based on these facts, the appellate court concluded that DeLeon never assumed the status of attorney for a prosecution witness. Accordingly, there was no *per se* conflict. The appellate court further found that, because defendant had not pointed to any instance where he received less than diligent representation from DeLeon, there was no actual conflict of interest. Nos. 1–04–2776, 1–06–2052 cons. (unpublished order under Supreme Court Rule 23). Justice Wolfson dissented, finding that a *per se* conflict existed. We thereafter granted defendant's petition for leave to appeal. 210 Ill. 2d R. 315.

## ANALYSIS

### Conflict of Interest Analysis

A criminal defendant's sixth amendment right to effective assistance of counsel includes the right to conflict-free representation. *People v. Morales*, 209 Ill. 2d 340, 345 (2004). In determining whether a defendant received effective assistance of counsel based on

an alleged conflict of interest, we first resolve whether counsel labored under a *per se* conflict. A *per se* conflict is one in which " 'facts about a defense attorney's status \*\*\* engender, *by themselves*, a disabling conflict.' (Emphasis in original.)" *Morales*, 209 Ill. 2d at 346, quoting *People v. Spreitzer*, 123 Ill. 2d 1, 14 (1988). When a defendant's attorney has a tie to a person or entity that would benefit from an unfavorable verdict for the defendant, a *per se* conflict arises. *People v. Janes*, 168 Ill. 2d 382, 387 (1995). " '[I]f counsel, unknown to the accused and without his knowledgeable assent, is in a duplicitous position where his full talents–as a vigorous advocate having the single aim of acquittal by all means fair and honorable–are hobbled or fettered or restrained by commitments to others' [citation]," effective assistance of counsel is lacking. *People v. Stoval*, 40 Ill. 2d 109, 112 (1968).

We explained the justification underlying the *per se* rule in *Spreitzer*. First, we noted that counsel's knowledge that a result favorable to his other client or association would inevitably conflict with defendant's interest "might 'subliminally' affect counsel's performance in ways [that are] difficult to detect and demonstrate." *Spreitzer*, 123 Ill. 2d at 16. Also, we noted the possibility that counsel's conflict would subject him to " 'later charges that his representation was not completely faithful.' [Citations.]" *Spreitzer*, 123 Ill. 2d at 17.

If a *per se* conflict exists, defendant is not required to show that counsel's " 'actual performance was in any way affected by the existence of the conflict.' " *Morales*, 209 Ill. 2d at 345, quoting *Spreitzer*, 123 Ill. 2d at 15. In other words, a defendant is not required to show actual prejudice when a *per se* conflict exists. *Stoval*, 40 Ill. 2d at 113. Unless a defendant waives his right to conflict-free counsel, a *per se* conflict is grounds for automatic reversal. *Morales*, 209 Ill. 2d at 345.

We have identified three situations where a *per se* conflict exists: (1) when defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution (*Spreitzer*, 123 Ill. 2d at 14; see also *People v. Lawson*, 163 Ill. 2d 187, 210-11 (1994) (collecting cases)); (2) when defense counsel contemporaneously represents a prosecution witness (see *People v. Moore*, 189 Ill. 2d 521, 538 (2000); *People v. Thomas*, 131 Ill. 2d

104, 111 (1989)); and (3) when defense counsel was a former prosecutor who had been personally involved in the prosecution of the defendant (see *Lawson*, 163 Ill. 2d at 217-18). Where the record shows that the facts are undisputed, the question of whether a *per se* conflict exists is a legal question we review *de novo*. *Morales*, 209 Ill. 2d at 345.

If a *per se* conflict does not exist, a defendant may still establish a violation of his right to effective assistance of counsel by showing an actual conflict of interest that adversely affected his counsel's performance. *Morales*, 209 Ill. 2d at 348-49. To show an actual conflict of interest, a defendant must point to " 'some specific defect in his counsel's strategy, tactics, or decision making attributable to [a] conflict.' " *Morales*, 209 Ill. 2d at 349, quoting *Spreitzer*, 123 Ill. 2d at 18. In this situation, mere " '[s]peculative allegations and conclusory statements are not sufficient to establish that an actual conflict of interest affected counsel's performance.' " *Morales*, 209 Ill. 2d at 349, quoting *People v. Williams*, 139 Ill. 2d 1, 12 (1990).

### *Per Se* Conflict Rule

At the outset, the State asks us to abandon the *per se* conflict analysis and apply only an actual-conflict analysis. The State concedes that its request implicates *stare decisis*.

The doctrine of *stare decisis* " ' "expresses the policy of the courts to stand by precedents and not to disturb settled points." ' [Citations.]" *People v. Colon*, 225 Ill. 2d 125, 145 (2007). When a question has been deliberately examined and decided, it should be considered settled and closed to further argument. *Colon*, 225 Ill. 2d at 146. However, *stare decisis* is not an "inexorable command." *Colon*, 225 Ill. 2d at 146.

> "If it is clear a court has made a mistake, it will not decline to correct it, even if the mistake has been reasserted and acquiesced in for many years. [Citation.] That said, this court will not depart from precedent merely because it might have decided otherwise if the question were a new one. [Citation.] As we recently reiterated, any departure from *stare decisis* must be ' "specially justified." ' [Citation.] Thus, prior decisions should not be overruled absent 'good cause' or

'compelling reasons.' [Citation.] In general, a settled rule of law that does not contravene a statute or constitutional principle should be followed unless doing so is likely to result in serious detriment prejudicial to public interests. [Citation.] Good cause to depart from *stare decisis* also exists when governing decisions are unworkable or badly reasoned." *Colon*, 225 Ill. 2d at 146.

To support its argument that we should abandon the *per se* rule, in favor of an actual-conflict analysis only, the State argues that the *per se* rule is at odds with United States Supreme Court precedent, in particular *Mickens v. Taylor*, 535 U.S. 162, 152 L. Ed. 2d 291, 122 S. Ct. 1237 (2001). We disagree.

In *Mickens*, the defendant's attorney represented the victim at the time the defendant murdered the victim. Counsel did not disclose the dual representation to the defendant or the trial court. The Court held that where the trial court fails to inquire into a potential conflict, of which it knew or should have known, a defendant must establish that the conflict adversely affected his attorney's performance. *Mickens*, 535 U.S. at 174, 152 L. Ed. 2d at 305-06, 122 S. Ct. at 1245. The State's reliance on *Mickens* is misplaced.

First, the only question before the *Mickens* Court dealt with the trial court's failure to inquire into a potential conflict. *Mickens*, 535 U.S. at 174, 152 L. Ed. 2d at 305-06, 122 S. Ct. at 1245. The question before the Court was not whether a conflict existed, be it an actual conflict or otherwise.

Second, the facts surrounding the attorney's representation of the victim in *Mickens* are distinguishable. There, counsel did not believe he had any continuing obligation or duty to his former client, the victim of the defendant's crime. The same is not true here. DeLeon expressly testified at the postconviction hearing that he was still Cepeda's attorney and was still obligated to act on Cepeda's behalf should Cepeda be arrested on the bond warrant. DeLeon acknowledged his loyalty to Cepeda such that he would not reveal any conversations he had had with Cepeda.

Lastly, and most importantly, the State ignores pertinent remarks made by the Court which demonstrate that our *per se* rule does not conflict with *Mickens*. The *Mickens* Court recognized exceptions to the general rule that a defendant must show prejudice, holding that a

-9-

defendant need not show prejudice when he is denied assistance of counsel entirely or during a critical stage, or in "circumstances of that magnitude," because the verdict is so likely unreliable that a case-by-case determination is unnecessary. *Mickens*, 535 U.S. at 166, 152 L. Ed. 2d at 301, 122 S. Ct. at 1241. As one example of when a "circumstance[] of that magnitude" may arise, the Court identified the situation where defense counsel actively represents conflicting interests. *Mickens*, 535 U.S. at 166, 152 L. Ed. 2d at 301, 122 S. Ct. at 1241. According to the *Mickens* Court, in this context, "Both *Sullivan* itself [citation] and *Holloway* [citation] stressed the high probability of prejudice arising from multiple concurrent representation, and the difficulty of proving that prejudice." (Emphasis in original.) *Mickens*, 535 U.S. at 175, 152 L. Ed. 2d at 306, 122 S. Ct. at 1246. Although the exception in *Mickens* is not directly on point, the rationale is equally applicable to our case. Where, as here, an attorney represents both the defendant and the alleged victim of defendant's crime, there is a high probability of prejudice to a defendant and an equally high degree of difficulty of proving that prejudice.

Thus, we conclude, contrary to the State's argument, *Mickens* does not dictate that this court should abandon our *per se* conflict rule. Rather than being at odds with *Mickens*, our *per se* rule comports with the exception expressed by that Court.

The State also argues that the *per se* conflict rule is unworkable but does not explain why. We can discern no reason why such a rule is unworkable. If counsel represents the defendant *and* the victim of the defendant's alleged conduct, then that ends the matter. There is a *per se* conflict. Application of the *per se* rule is not unworkable but rather straightforward and simple.

The State further argues that dispensing with the *per se* rule will reduce complexity and result in more uniform application of the law. Again, we disagree. If we abandon the *per se* conflict rule, a fact-specific analysis would have to be undertaken in each and every case. This is not less complex. Likewise, a case-by-case analysis would create more diversity than uniformity. Thus, contrary to the State's argument, abandoning the *per se* rule will not reduce complexity or result in more uniform application of the law.

Lastly, the State argues that the *per se* rule provides an incentive for defense counsel to conceal possible conflicts, knowing that if they do not disclose a conflict and their client is convicted, a new trial will be granted based on the conflict. We rejected this reasoning in *Coslet*, where we observed:

> "One could even conjecture that a defendant and his lawyer could knowingly and collusively enter into such an arrangement in an effort to obtain a reversal in the event of a conviction.
>
> This is a risk that this court is prepared to take, however, in order to assure that every person is assured of the right to effective assistance of counsel at his trial." *People v. Coslet*, 67 Ill. 2d 127, 136 (1977).

We conclude that the rationale underlying the *per se* conflict rule, espoused above, remains valid, particularly where, as here, counsel simultaneously represents both the alleged perpetrator and the alleged victim of the crime being prosecuted. The State has not established good cause or compelling reason for this court to depart from *stare decisis*. Accordingly, we reject the State's request to abandon the *per se* conflict of interest rule.

## Application of the *Per Se* Conflict Rule

Defendant contends that the appellate court erred in concluding that DeLeon's representation of Cepeda, the alleged victim, at the same time he represented defendant did not constitute a *per se* conflict. Defendant, on the other hand, argues this case is a compelling example of a *per se* conflict and prejudice must be presumed.

The State contends there was no *per se* conflict despite DeLeon's dual representation based on the unique facts of this case: (1) DeLeon was not actively representing Cepeda and had not spoken to him in years; (2) DeLeon was unable to withdraw as Cepeda's counsel because of Cepeda's absence, and (3) the State assured DeLeon that Cepeda would not testify. These facts, the State claims, take this case out of the *per se* conflict category. The State directs our attention to *Morales*, which the appellate court relied on.

-11-

In *Morales*, defense counsel represented Jorge Hernandez, the defendant's superior in a drug-distribution organization, on federal drug charges at the same time he represented the defendant in his trial for the murder of Hernandez's courier, solicitation to commit murder for hire, and conspiracy to commit murder. *Morales*, 209 Ill. 2d at 344. The State identified Hernandez as a witness against defendant on its witness list. Prior to trial, the prosecutor advised the court, in the defendant's presence, of the potential conflict of interest. *Morales*, 209 Ill. 2d at 344. Ultimately, Hernandez did not testify for the State. Following his conviction, on direct appeal, the defendant argued that counsel's contemporaneous representation created a conflict of interest that deprived him of effective assistance of counsel. *Morales*, 209 Ill. 2d at 345.

We agreed that the situation at issue potentially fell within the *per se* conflict category of cases. *Morales*, 209 Ill. 2d at 346. However, we concluded that, because Hernandez was never called as a witness in the defendant's case, "defense counsel never assumed the status of attorney for a prosecution witness." *Morales*, 209 Ill. 2d at 346. We held that the contemporaneous representation did not result in a *per se* conflict and, therefore, counsel did not render ineffective assistance. *Morales*, 209 Ill. 2d at 346.

*Morales* does not control the outcome in the case at bar. While it is certainly true Cepeda could have been a witness for the State, the distinctive feature here, which the appellate court failed to recognize, is that Cepeda was also the alleged victim of defendant's crime. To make matters worse, the facts underlying Cepeda's arrest and DeLeon's ultimate representation of him arose in relation to Cepeda's kidnapping of defendant and returning defendant to Cepeda's home after he had taken defendant back to his own home to further threaten defendant's family. In essence, defendant was Cepeda's "victim" in connection with the unlawful use of a weapon case. This fact underscores the conflicting situation present when DeLeon represented both defendant and Cepeda.

Because Cepeda was the alleged victim of defendant's offense, this case is more akin to *Stoval*. In *Stoval*, the defendant was convicted of burglary and theft of jewelry. On appeal, he argued that he was denied effective assistance of counsel because the law firm representing him had represented and continued to represent the

jewelry store he was convicted of burglarizing, and had also represented the jewelry store owner, individually. *Stoval*, 40 Ill. 2d at 112. Agreeing, we held:

> " 'The circumstances here are such that an attorney cannot properly serve two masters. *** [H]is [defendant's] right to counsel under the Constitution is more than a formality, and to allow him to be represented by an attorney with such conflicting interests as existed here without his knowledgeable consent is little better than allowing him no lawyer at all. *** This situation is too fraught with the dangers of prejudice, prejudice which the cold record might not indicate, that the mere existence of the conflict is sufficient to constitute a violation of [defendant's] rights whether or not it in fact influences the attorney or the outcome of the case.' " *Stoval*, 40 Ill. 2d at 112-13, quoting *United States v. Myers*, 253 F. Supp. 55, 57 (E.D. Pa. 1966).

Although there was no evidence showing counsel did not conduct a diligent and proper defense, we concluded that public policy disfavors dual representation because of the possible conflict of interest. *Stoval*, 40 Ill. 2d at 113. We further concluded that the defendant did not effectively waive his right to the conflict even though he had been advised of the dual representation. We reversed the conviction and remanded for further proceedings. *Stoval*, 40 Ill. 2d at 114. See also *Coslet*, 67 Ill. 2d at 134 (finding a *Stoval* conflict where counsel simultaneously represented both the defendant in her trial for voluntary manslaughter of her husband and the administrator of the husband's estate; the conflict raised the possibility that the estate would be enriched if the defendant was convicted).

The State attempts to distinguish *Stoval*, pointing out that, unlike the situation in *Stoval*, DeLeon did not have an active relationship with Cepeda. We are unpersuaded by the State's argument.

First, the very nature of a *per se* conflict rule precludes inquiry into the specific facts of a case. DeLeon's *status* as Cepeda's attorney itself dictates application of the *per se* rule. See *Morales*, 209 Ill. 2d at 346 (" 'facts about a defense attorney's *status* *** engender, *by themselves*, a disabling conflict.' " (Emphases added and in original.)) See also *People v. Kester*, 66 Ill. 2d 162, 168 (1977) (fact that defendant's attorney previously served as prosecutor against

-13-

defendant in same case necessitated application of *per se* rule; inquiry into nature and extent of his involvement as prosecutor was not necessary or desirable); *Lawson*, 163 Ill. 2d at 216 (fact of actual commitment to another, not degree or extent of that commitment, dictated application of *per se* rule). A case-by-case determination of the facts, as the State urges, would extinguish the *per se* conflict rule entirely.

Moreover, we have construed broadly the *per se* conflict rule when counsel represents both the victim of defendant's offense and the defendant himself. In general, we have not required representation of the victim to be "contemporaneous" or "active." Ordinarily, conflict arises from counsel's "association," "relationship," "commitment," "professional connection," or "some tie" with the victim, a party, or the prosecution, which is either "prior or current" or "previous or current." See *People v. Hardin*, 217 Ill. 2d 289, 301 (2005); *Morales*, 209 Ill. 2d at 345-46; *People v. Graham*, 206 Ill. 2d 465, 472 (2003); *People v. Miller*, 199 Ill. 2d 541, 545 (2002); *People v. Moore*, 189 Ill. 2d 521, 538-39 (2000); *Lawson*, 163 Ill. 2d at 211; *People v. Kitchen*, 159 Ill. 2d 1, 29 (1994); *Spreitzer*, 123 Ill. 2d at 15. We decline to impose an "active" requirement upon this category of *per se* conflicts, as the State urges. We have clearly stated in the past that a prior relationship falls within this category. As such, no active representation is necessary and, thus, we need not inquire into the specific facts of the nature and extent of the representation to determine whether the *per se* rule applies.

Based on the foregoing, we find that to ensure that a defendant's right to effective assistance of counsel is given effect, the *per se* conflict rule applies whenever an attorney represents a defendant and the alleged victim of the defendant's crime, regardless of whether the attorney's relationship with the alleged victim is active or not, and without inquiring into the specific facts concerning the nature and extent of counsel's representation of the victim. Accordingly, because DeLeon represented both defendant and the alleged victim, Cepeda, we hold that the lower courts erred in finding no *per se* conflict of interest. Since defendant was not advised of the conflict and, therefore, did not waive it, automatic reversal is required. *Morales*, 209 Ill. 2d at 345.

As an aside, we feel compelled to express our concern about the conduct of all the attorneys involved. Three attorneys–the prosecutor, DeLeon, and Bloom–failed to advise the court of the dual representation. There is no justification for this failure. DeLeon, according to his testimony at the evidentiary hearing, determined on his own that no conflict of interest existed in his representation of both defendant and Cepeda. No authority is cited by the State, nor does it attempt to explain why defense counsel and the prosecutor, on their own, or in collaboration, believed it permissible for them to determine whether a *per se* conflict existed. We caution attorneys in the future and remind them of their obligation to bring to the trial court's attention any facts or circumstances that may create a conflict of interest. Bringing the situation to the trial court's attention would have provided the court with an opportunity to explain the circumstances and ramifications to defendant. Defendant could have made an informed decision about the situation and the conflict could have been waived had defendant so desired. Defendant was not afforded this opportunity in the case at bar because the attorneys never advised defendant or the trial court of the facts.

Because we reverse, we have thoroughly reviewed the evidence and are convinced it was sufficient to support a finding of guilt beyond a reasonable doubt. Under these circumstances, defendant does not face the risk of double jeopardy and may be retried. *Lawson*, 163 Ill. 2d at 218.

## CONCLUSION

The circuit and appellate courts erred in concluding that no *per se* conflict of interest arose in this case. Counsel represented both Cepeda, the alleged victim of defendant's offense, and defendant. Accordingly a *per se* conflict existed. The judgments of the circuit and appellate courts are reversed. Defendant's conviction is reversed. The cause is remanded to the circuit court for further proceedings consistent with this decision.

*Reversed and remanded.*