**2020 IL 125005**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 125005)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
DONNELL D. GREEN, Appellant.

*Opinion filed May 21, 2020.*

JUSTICE MICHAEL J. BURKE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Kilbride, Garman, Karmeier, Theis, and Neville concurred in the judgment and opinion.


## OPINION

¶ 1        Defendant, Donnell D. Green, was convicted of two counts of the first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2006)) of Jimmie Lewis and was sentenced to 35 years' imprisonment on one of those convictions. Defendant's conviction was affirmed on direct appeal. *People v. Green*, 2012 IL App (2d)

101043-U. Defendant then filed a postconviction petition alleging, *inter alia*, that his trial counsel labored under a *per se* conflict of interest because his trial counsel had previously represented Danny "Keeko" Williams, the intended victim of the murder, and defendant neither knew about the conflict nor waived the conflict. Following a third-stage evidentiary hearing, the Lake County circuit court denied defendant's postconviction petition. The appellate court affirmed the trial court's order, finding no *per se* conflict of interest. 2019 IL App (2d) 160217-U.[1] This court subsequently granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. July 1, 2018).

¶ 2                                BACKGROUND

¶ 3         Jimmie Lewis was shot and killed on October 18, 2017, while riding as a passenger in a vehicle driven by Danny "Keeko" Williams. Lewis and Keeko were associated with a street gang known as the Black P. Stones gang or the "Moes."

¶ 4         On the night of the shooting, defendant was riding in a vehicle with his friends Chappel Craigen, Jabril Harmon, and Emanuel Johnson. Defendant and his friends were associated with a street gang known as the "4 Corner Hustlers." Craigen was driving. Defendant was in the front passenger seat. Johnson was in the back seat behind defendant, and Harmon was in the back seat behind Craigen. While driving, they passed the vehicle that Keeko was driving, going in the opposite direction.

¶ 5         The Moes had recently had an altercation with the 4 Corner Hustlers, and the gangs had been feuding since 2005. When defendant and his friends saw Keeko's vehicle, they said, "that's them, that's them," meaning "that's the Moes *** that's Keeko." Craigen made a U-turn and followed Keeko's vehicle. Everyone in the car "got excited." Defendant grabbed a gun from the middle console and said, "I'll do it," meaning he would shoot at Keeko's car. Defendant, however, passed the gun to

---

[1]Justice McLaren concurred with the majority's decision affirming the trial court but dissented from that portion of the opinion granting the State's request that defendant be assessed $50 as costs of the appeal pursuant to section 4-2002 of the Counties Code (55 ILCS 5/4-2002 (West 2016)). 2019 IL App (2d) 160217-U, ¶ 28 (McLaren, J., concurring in part and dissenting in part).

Johnson, who passed it to Harmon. When Craigen's vehicle pulled up to the side of Keeko's vehicle, Harmon shot multiple times, hitting and killing Lewis.

¶ 6       Defendant was charged with three counts of first degree murder—intentional, knowing, and with a strong probability of death. 720 ILCS 5/9-1(a)(1), (a)(2), (a)(3) (West 2006). Attorney Robert Ritacca entered an appearance on behalf of defendant on July 20, 2009. Defendant's case was severed from that of his codefendants and proceeded to jury trial in June 2010. The State's theory of the case was that defendant was guilty based upon accountability.

¶ 7       The jury found defendant not guilty of intentional first degree murder but found him guilty of both knowing and strong probability of murder, while armed with a firearm. Defendant was sentenced to a 35-year prison term on the knowing murder conviction.

¶ 8       Defendant filed a direct appeal, arguing that the State did not prove that he was accountable for Lewis's murder. The appellate court affirmed defendant's conviction. 2012 IL App (2d) 101043-U.

¶ 9       Defendant then filed a postconviction petition arguing, *inter alia*, that defense counsel was ineffective because he labored under a *per se* conflict of interest. Defendant noted that Ritacca, his trial counsel, had previously represented Keeko Williams, the intended murder victim, creating a *per se* conflict of interest.

¶ 10       The trial court advanced defendant's petition to the second stage of postconviction proceedings. The State then filed a motion to dismiss the petition. Following a hearing on the State's motion to dismiss, the trial court dismissed the *per se* conflict claim on the ground that Keeko was not the victim of the murder for which defendant was charged and convicted. The trial court, however, advanced defendant's additional claims—that Ritacca had an actual conflict of interest and that Ritacca had provided ineffective assistance of counsel—to a third-stage evidentiary hearing. Prior to the start of the third-stage evidentiary hearing, the trial court stated that defendant could still try to prove a *per se* conflict of interest, even though the trial court had dismissed that claim.

¶ 11       At the hearing, Ritacca testified that he entered his appearance on behalf of defendant on July 23, 2009. Ritacca had represented Keeko Williams in two

separate cases during the time period from June 10, 2007, through March 14, 2008. The shooting in this case took place on October 18, 2007. Ritacca represented Keeko in a cannabis possession case from June 10 through November 28, 2007. Ritacca also represented Keeko in a driving while license suspended case from July 18, 2007, through March 14, 2008, although Ritacca testified that Keeko failed to appear in that case and he lost track of him. The parties also stipulated that Ritacca had represented Keeko's brothers Joey and Brannon prior to representing defendant and that Joey and Brannon were members of the Moes gang. Ritacca testified that he could not remember whether he told defendant or the State that he had previously represented Keeko, but he confirmed that he had not told the trial court about the representation.

¶ 12        Defendant testified that Ritacca did not tell him he had previously represented Keeko and said that he would not have hired Ritacca if he had known that Ritacca had previously represented Keeko and Keeko's family. Keeko was listed as a potential trial witness for both the State and the defense but never testified.

¶ 13        Following argument, the trial court denied defendant's postconviction petition. The trial court agreed with defendant that Keeko was the actual target of the shooting and that Ritacca had represented Keeko on prior cases unrelated to the instant case. Defendant repeated his claim that, because Keeko was the intended victim of the shooting, a *per se* conflict existed based upon the doctrine of transferred intent. The trial court rejected that argument, stating that it was aware of no case holding that transferred intent created a *per se* conflict, and declined to find such a conflict in this case. The trial court also found that there was no actual conflict of interest, nor did defendant receive ineffective assistance of counsel.

¶ 14        On appeal, defendant challenged only the trial court's finding that Ritacca did not have a *per se* conflict of interest based upon his prior representation of the intended victim of the murder. Defendant again argued that Ritacca labored under a *per se* conflict of interest because Ritacca had previously represented Keeko. In the alternative, defendant asked the appellate court to recognize a fourth category of *per se* conflict—where defense counsel previously represented the intended victim. The State responded that there was no *per se* conflict because Keeko was not the actual victim of the shooting.

¶ 15        Citing *People v. Fields*, 2012 IL 112438, ¶ 18, the appellate court noted three situations in which a *per se* conflict exists, including "where defense counsel has a prior or contemporaneous association with the *victim*, the prosecution, or an entity assisting the prosecution." (Emphasis in original.) 2019 IL App (2d) 160217-U, ¶ 19. Defendant claimed that Ritacca's prior representation of Keeko fit within that *per se* conflict of interest situation because Keeko was the intended victim in this case. The appellate court disagreed, finding there was no *per se* conflict of interest because defendant was charged with, and convicted of, the murder of Jimmie Lewis and was not charged with the murder of Ritacca's former client, Keeko Williams. *Id.* ¶ 21.

¶ 16        The appellate court also declined to find a fourth category of *per se* conflict, noting that the *Fields* decision reiterated the court's long-standing precedent recognizing three situations where a *per se* conflict of interest exists. *Id.* ¶ 23. The appellate court therefore affirmed the trial court's order denying defendant's postconviction petition.

¶ 17        Defendant now appeals the decisions of the lower courts finding there was no *per se* conflict of interest in this case. In the alternative, defendant asks this court to recognize a fourth category of *per se* conflict: where defense counsel previously or contemporaneously represented the intended victim of the crime.

¶ 18                                              ANALYSIS

¶ 19        The parties agree that the facts underlying this appeal are undisputed. Accordingly, the issue of whether a *per se* conflict exists presents a legal question that this court reviews *de novo*. *Fields*, 2012 IL 112438, ¶ 19.

¶ 20        A criminal defendant's right to the effective assistance of counsel arises from the sixth amendment and includes the right to conflict-free representation. *People v. Nelson*, 2017 IL 120198, ¶ 29. Conflict-free representation means "assistance by an attorney whose allegiance to his client is not diluted by conflicting interests or inconsistent obligations." *People v. Spreitzer*, 123 Ill. 2d 1, 13-14 (1988). There are two categories of conflict of interest: *per se* and actual. *Fields*, 2012 IL 112438, ¶ 17.

¶ 21    The term "*per se*" conflict was first used in *People v. Coslet*, 67 Ill. 2d 127 (1977), to describe the holding in that case, as well as in prior cases. In *Coslet*, defense counsel for a woman accused of murdering her husband was at the same time acting as the administrator of the husband's estate. *Id.* at 131-32. The decedent had died intestate, and the defendant was not his sole heir, so the defendant's conviction at least raised the possibility that the decedent's estate would be enriched. *Id.* at 134. The *Coslet* court noted that an earlier decision had adopted a conflict of interest rule "whereby allegations and proof of prejudice are unnecessary in cases where a defense counsel, without the knowledgeable assent of the defendant, might be restrained in fully representing the defendant's interests due to his or her commitments to others." *Id.* at 133 (citing *People v. Stoval*, 40 Ill. 2d 109, 113 (1968)). The court therefore held that the attorney was in a *per se* conflict of interest position in defending the defendant and affirmed the reversal of the defendant's conviction. *Id.* at 134, 136.

¶ 22    Thereafter, in *Spreitzer*, 123 Ill. 2d at 14, the court noted that, in each of the cases to apply a *per se* conflict of interest rule, certain facts about the defense attorney's status were held to engender, by themselves, a disabling conflict. The court explained that the justification for treating the conflicts in those cases as *per se* was that the defense counsel in each case had a "tie to a person or entity— either counsel's client, employer, or own previous commitments—which would benefit from an unfavorable verdict for the defendant." *Id.* at 16.

¶ 23    *Spreitzer* explained that one problem created by such a tie is that the "knowledge that a favorable result for the defendant would inevitably conflict with the interest of his client, employer or self might 'subliminally' affect counsel's performance in ways difficult to detect and demonstrate." *Id.* A second problem is the "possibility that the conflict will unnecessarily subject the attorney to 'later charges that his representation was not completely faithful.' " *Id.* at 16-17 (quoting *Stoval*, 40 Ill. 2d at 113).

¶ 24    This court has identified three situations in which a *per se* conflict of interest will be found: "(1) where defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) where defense counsel contemporaneously represents a prosecution witness; and (3) where defense counsel was a former prosecutor who had been personally

involved with the prosecution of defendant." *Fields*, 2012 IL 112438, ¶ 18. A *per se* conflict of interest is automatic grounds for reversal unless the defendant waives his right to conflict-free representation. *Id.*

¶ 25    Defendant asserts that the facts of this case fall within the first situation giving rise to a *per se* conflict of interest, specifically, where defense counsel has an association with the victim. Defendant contends that defense counsel's representation of the intended, but not actual, victim of a charged crime presents the same risks as defense counsel's representation of the actual victim, so that defense counsel's representation of intended victims is included within the *per se* exception. Defendant relies on the decision in *People v. Hernandez*, 231 Ill. 2d 134 (2008), in support of his claim.

¶ 26    In *Hernandez*, the defendant was charged with two counts of the solicitation of murder for hire of Jamie Cepeda. *Id.* at 138. In 2003, the defendant retained John DeLeon to represent him on the charges. *Id.* at 138-39. DeLeon had previously been retained by Cepeda in connection with a 1999 unlawful use of a weapon charge. *Id.* at 139. DeLeon continued to represent Cepeda through January 16, 2001, when a bond forfeiture was issued against Cepeda for failure to appear in court. *Id.* Cepeda had fled the country prior to that date and had not returned. *Id.* Nonetheless, DeLeon continued to be the attorney of record for Cepeda. *Id.* Although Cepeda's name appeared on the State's list as a potential witness in the defendant's case, neither the defendant nor the trial court was informed of DeLeon's dual representation. *Id.* Both DeLeon and the assistant state's attorney prosecuting the defendant's case were aware of the dual representation. *Id.*

¶ 27    The defendant was found guilty, and he later filed a postconviction petition alleging that DeLeon's dual representation of himself and Cepeda constituted a *per se* conflict of interest that denied him the effective assistance of counsel. *Id.* The defendant's postconviction petition included an affidavit from DeLeon, in which DeLeon averred that he considered himself to be Cepeda's attorney because his appearance was still on file in Cepeda's case. *Id.* DeLeon also averred that neither he nor the prosecutor brought his prior and active representation of Cepeda to the defendant's attention. *Id.* In addition, at an evidentiary hearing on the defendant's postconviction petition, DeLeon stated on direct examination that he still considered himself to be Cepeda's attorney and, if Cepeda were apprehended,

DeLeon would still be representing Cepeda. *Id.* at 140. On cross-examination, DeLeon testified that he had not seen or spoken with Cepeda since some time before January 2001 and explained that he did not tell the defendant that he represented Cepeda because he did not think it was a problem. *Id.*

¶ 28 Following the evidentiary hearing, the trial court denied the defendant's postconviction petition, finding there was no *per se* conflict because there was no ongoing relationship between DeLeon and Cepeda for the past five years, DeLeon had no substantial contact with Cepeda, and Cepeda had not been called as a witness at the defendant's trial. *Id.* at 141. The appellate court affirmed, with one justice dissenting. *Id.* at 141-42.

¶ 29 On appeal, this court looked to the three situations where it had recognized a *per se* conflict of interest and concluded that the first situation was present in the case: when defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution. *Id.* at 150. The *Hernandez* court then reversed the lower courts, stating that "DeLeon's *status* as Cepeda's attorney itself dictates application of the *per se* rule." (Emphasis in original.) *Id.* The court explained that application of the *per se* rule is straightforward and simple. Thus, there is a *per se* conflict "[i]f counsel represents the defendant *and* the victim of the defendant's alleged conduct." (Emphasis in original.) *Id.* at 147.

¶ 30 Defendant points to similarities between this case and *Hernandez* in support of his argument. For example, like DeLeon's representation of Cepeda, Ritacca had previously represented Keeko in two different cases. In addition, Ritacca lost track of Keeko on the traffic case when Keeko failed to appear, just as DeLeon lost track of Cepeda when Cepeda failed to appear. As in *Hernandez*, Ritacca's prior representation of Keeko was never brought to the attention of the trial court, and defendant never waived the conflict.

¶ 31 Defendant concedes that Jimmie Lewis, the unintended victim in this case, was the only victim named in the indictment. Defendant argues, however, that the same principle that would mandate reversal when defense counsel represented the actual victim should apply when counsel represented the intended, but not actual, victim. Defendant claims that the same risks that this court has stressed—an imperceptible, negative, subliminal effect on the attorney's performance and later charges of

unfaithful representation—are present when trial counsel previously represented the intended victim of the charged offense, even if the intended victim is not named in the charging instrument. In this case, Keeko would obviously benefit from an unfavorable verdict against defendant, who was accused of participating with rival gang members in an attempt to murder Keeko.

¶ 32   Despite defendant's attempt to paint *Hernandez* as controlling, we find this case entirely distinguishable. *Hernandez* found a *per se* conflict of interest because defense counsel represented both the defendant and the victim of the charged offense. Defense counsel in the instant case never represented Jimmie Lewis, the victim of the charged offense. Keeko Williams may very well have been the intended victim in this case, but he was never the "victim" for purposes of a *per se* conflict of interest.

¶ 33   Nonetheless, in attempting to analogize his case to *Hernandez*, defendant describes the *Hernandez* victim as an "intended victim." Defendant reasons that, because Hernandez was charged with the solicitation of murder for hire of Cepeda, Cepeda was never actually harmed and was only a victim in the most technical sense. Defendant therefore maintains that the underlying facts in this case and *Hernandez* are the same, because defense counsel in each case previously represented an intended victim of a charged crime who was not actually harmed. Defendant asserts that he and the *Hernandez* defendant received disparate treatment based upon the charging decisions of the State, simply because Keeko was not named in the charging instrument as the intended victim. Defendant asks this court to correct that disparity.

¶ 34   Defendant's attempt to align his case with *Hernandez*, and thus within the first *per se* conflict of interest situation, is unavailing. Whether Cepeda was actually physically "harmed" or not, Cepeda was, in fact, the actual victim of the crime of solicitation of murder for hire. Hernandez was charged with two counts of the solicitation of murder for hire of Cepeda. Hernandez's defense counsel had represented Cepeda and was the attorney of record for Cepeda, at the same time that he represented Hernandez. Accordingly, there was no question that counsel in *Hernandez* represented both the defendant and the victim in the case.

¶ 35   Here, in contrast, Keeko was not the actual victim of the charged offense. The State's theory of the case was that a guilty verdict on the charged offense was proper

under the doctrine of transferred intent, even assuming defendant and his friends intended to target Keeko specifically. The charged offense was the first degree murder of Jimmie Lewis. Jimmie Lewis was the actual victim of the crime. There is no allegation that Ritacca ever represented Jimmie Lewis. There could be no *per se* conflict of interest in this case, then, because Ritacca did not represent both the defendant and the victim of the charged crime.

¶ 36 Defendant also argues that a determination of whether trial counsel is laboring under a *per se* conflict of interest, as it relates to his prior representation of a victim, should rest on the justifications for the *per se* conflict rule and the underlying facts related to trial counsel and the intended victim of the offense. The justification for the *per se* rule, however, does not itself expand the rule or create an additional basis for finding a *per se* conflict. The court rejected such an argument in *Fields*, where the appellate court had construed the justification for the *per se* conflict rule as creating an additional, alternate basis for finding a *per se* conflict. *Fields*, 2012 IL 112438, ¶ 41.

¶ 37 We likewise reject defendant's attempt to use the justification underlying the established *per se* rule concerning defense counsel's representation of victims to expand the rule beyond this court's precedent. As *Hernandez* recognized, application of the *per se* conflict rule is simple and straightforward. 231 Ill. 2d at 147. The matter is settled if counsel represents both the defendant and the victim of the defendant's alleged conduct. *Id.* Those circumstances are not present in this case. Accordingly, the appellate court correctly affirmed the trial court's order denying defendant's postconviction petition.

¶ 38 Our holding does not leave defendants without a remedy in similar circumstances. A defendant can assert a violation of his right to the effective assistance of counsel based upon an actual conflict of interest that adversely affected his counsel's performance. *Id.* at 144. In this case, defendant's postconviction petition contained claims for actual conflict of interest and ineffective assistance of counsel, in addition to his claim of a *per se* conflict of interest. The trial court denied those claims, and defendant chose not to appeal that portion of the trial court's order.

¶ 39 In the alternative, defendant asks this court to recognize a fourth category of *per se* conflict of interest. Defendant again cites the justification for treating

conflicts as *per se*, that "defense counsel in each case had a tie to a person or entity—either counsel's client, employer, or own previous commitments—which would benefit from an unfavorable verdict for the defendant." *Spreitzer*, 123 Ill. 2d at 16. Defendant again notes that Keeko was Ritacca's former client, who would benefit from an unfavorable verdict for defendant. In this portion of his argument, defendant acknowledges *Fields*'s holding that the justification for the *per se* rule does not create another basis for finding a conflict of interest. Defendant argues, however, that this court has never explicitly stated that the three traditional categories of *per se* conflict are exclusive categories.

¶ 40    Defendant argues that the interests of justice are best served by finding a *per se* conflict of interest when a defendant's trial counsel had previously represented the intended victim of the charged offense. Defendant claims *Fields* left open the possibility of another category of *per se* conflict when it stated there was no "need to consider whether defendant is correct that additional situations might be found where a *per se* conflict of interest exists." *Fields*, 2012 IL 112438, ¶ 37.

¶ 41    We decline defendant's request to create a fourth category of *per se* conflict. A *per se* conflict of interest is found where a defendant is denied assistance of counsel entirely or during a critical stage, or in " 'circumstances of that magnitude,' " because the verdict is likely so unreliable that a case-by-case determination is unnecessary. *Hernandez*, 231 Ill. 2d at 146 (quoting *Mickens v. Taylor*, 535 U.S. 162, 166 (2002)). "Circumstances of that magnitude" are necessarily the exception. This court's long-standing precedent has always recognized only three "circumstances of that magnitude" in which a *per se* conflict will be found to exist.

¶ 42    The language in *Fields*, which defendant cites as leaving open the possibility of additional *per se* conflict situations, appears in the portion of the opinion addressing whether the first and second *per se* conflict situations are mutually exclusive. In holding that the first and second *per se* conflict situations are distinct, the opinion simply notes that the court need not consider defendant's claim that additional situations might be found where a *per se* conflict of interest exists. See *Fields*, 2012 IL 112438, ¶ 37. In fact, the *Fields* opinion later expressly states that, "[p]ursuant to long-standing precedent, this court has recognized three situations where a *per se* conflict of interest exists." *Id.* ¶ 41.

¶ 43 In the event any confusion remains, we reiterate that this court recognizes only three situations in which a *per se* conflict of interest will be found to exist. Those situations are "(1) where defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) where defense counsel contemporaneously represents a prosecution witness; and (3) where defense counsel was a former prosecutor who had been personally involved with the prosecution of defendant." *Id.* ¶ 18. Because Ritacca's representation of both defendant and Keeko Williams did not fit within any of those three *per se* conflict situations, Ritacca's representation of Keeko did not create a *per se* conflict in this case.

¶ 44                                                              CONCLUSION

¶ 45 For all the foregoing reasons, the judgment of the appellate court, which affirmed the circuit court's order denying defendant's petition for postconviction relief, is affirmed.

¶ 46 Affirmed.