**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210089-U

Order filed November 30, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0089 Circuit No. 18-CF-389 |
| TYLER J. NAGEL, | ) ) ) | Honorable Kathy S. Bradshaw-Elliott, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Justices McDade and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   (1) Defense counsel did not have a *per se* conflict of interest, (2) counsel did not provide ineffective assistance, and (3) the court did not impose an improper double enhancement at sentencing.

¶ 2     Defendant, Tyler J. Nagel, appeals his convictions, arguing that he did not receive the benefit of conflict-free counsel when his attorney previously worked for the State. Defendant further contends that counsel was ineffective for advising him that he would serve only 50% of his sentence instead of 85%, and the court imposed an improper double enhancement. We affirm.

¶ 3                              I. BACKGROUND

¶ 4         The State charged defendant with aggravated arson (720 ILCS 5/20-1.1(a) (West 2018)),

aggravated stalking (*id.* § 12-7.4(a)(3)), two counts of violation of an order of protection (*id.*

§ 12-3.4(a)(1)), and criminal damage to property (*id.* § 21-1(1)(a)). The court appointed the

public defender's office.

¶ 5         The public defender's office later reassigned defendant to a new attorney when his first

attorney left the office. When defendant's new attorney first appeared, he stated that he needed a

conflict waiver signed by defendant. Counsel stated that before joining the public defender's

office, he was employed at the Kankakee County State's Attorney's Office and had appeared on

defendant's prior case. The prior case involved the same victim and had resulted in the order of

protection that defendant was now being charged with violating. At the next court date, counsel

told the court that defendant signed a waiver of conflict.

¶ 6         The potential conflict was discussed again at a later court date when defendant's attorney

stated that he was working at the state's attorney's office when the current case was filed but had

no other involvement in the case. The State clarified that counsel appeared on the first date of

defendant's misdemeanor case where the order of protection was presented and signed by the

court but did not believe that there was a conflict. Counsel stated that if he had any other

involvement other than the first appearance, he did not remember it. Counsel filed defendant's

waiver, which stated:

             "I, the undersigned, have been apprised by my currently appointed

        attorney, [defense counsel], that he was previously assigned to my case in his

        prior role as prosecutor or at the very least he was a prosecutor while my case was

        pending. He explained to me the extent of his involvement, if any, he had in the

                                            2

case to the best of his memory. He explained to me that this creates a potential 'conflict of interest' and that I can have him taken off my case if I wish. He also explained to me that I can waive this conflict and allow him to continue to represent me."

Underneath the acknowledgement was handwritten "and that I can revoke this waiver at any time." Defendant signed the waiver. The court asked defendant if he waived the conflict, and defendant orally confirmed that he did.

¶ 7    Before trial, defense counsel stated that defendant rejected the State's plea offer that included a sentencing cap of 15 years' imprisonment. The State also rejected defendant's counteroffer. Defendant proceeded to a jury trial and was found guilty of all five counts.

¶ 8    At sentencing, the court acknowledged that defendant had taken several classes while in jail and stated that he would receive credit in his sentence. The State informed the court that defendant would only be sentenced on counts I and II, because the criminal damage to property conviction merged with the aggravated arson conviction and the violations of orders of protection convictions merged with the aggravated stalking conviction. The State further stated that aggravated arson was a Class X felony with a sentencing range of 6 to 30 years' imprisonment where 85% of the sentence must be served. Defense counsel disagreed that defendant must serve 85%, stating that he believed it should be served at 50%, but that he could be mistaken. The court reviewed the sentencing statute and confirmed that defendant was required to serve 85% of his sentence.

¶ 9    The court sentenced defendant to 15 years' imprisonment, 85% of which must be served. The court explained

"[T]here's no more dangerous a crime than stalking. Okay. Stalking is one of the most dangerous crimes there are in this country. It's so dangerous that the law has now set the bond statute showing that if somebody is charged with stalking, that no bond should be set. So stalking is extremely dangerous. And in this case I—I believe, [defendant], you are extremely dangerous."

¶ 10　　　　　Defense counsel filed a motion to reconsider, arguing that his sentence should be reduced by one year. Counsel argued that the court stated that defendant would get credit for the classes he had taken in jail but the Department of Corrections would not allow it because defendant was statutorily required to serve 85% of his sentence. The court denied defendant's motion.

¶ 11　　　　　After the court's ruling, defense counsel stated he wanted to make a record regarding his mistake that defendant would only have to serve 50% of his sentence. Counsel stated that he told defendant after the trial that he was required to serve 50% but could not remember if he told defendant this before trial.

¶ 12　　　　　Defense counsel then filed a "Motion for Specific Performance/New Sentence," asking the court to impose a new sentence of 15 years' imprisonment to be served at 50%. Counsel argued he advised defendant he would only have to serve 50% of his sentence, and when the State first submitted its 15-year offer, counsel projected defendant would only have to serve 7½ years, in addition to the good-conduct credit defendant earned taking classes in jail. Defendant only learned he would have to serve 85% of his sentence at sentencing. Defendant argued that he would not have proceeded to trial if he had known he would have to serve 85% of his sentence. The State argued that a sentence served at 50% would constitute an illegal plea, and if the State had realized its error during plea negotiations, it would have adjusted its original offer to reflect a

more appropriate offer. The court denied defendant's motion finding that defendant had not been prejudiced and could not support ineffective assistance of counsel claims. Defendant appeals.

¶ 13                                    II. ANALYSIS

¶ 14                                A. Conflict of Interest

¶ 15        Defendant contends his counsel labored under a conflict of interest, and that he never validly waived this conflict. The parties dispute whether a conflict exists when defense counsel represented the State during a pretrial court proceeding in defendant's prior case.

¶ 16        Every defendant has a constitutional right to effective assistance of counsel, which includes the right to counsel free from conflicting interest or inconsistent obligations. U.S. Const., amends. VI, XIV; Ill. Const., art. I, § 8; *People v. Hernandez*, 231 Ill. 2d 134, 142 (2008). Illinois courts have recognized two categories of conflicts of interest: *per se* and actual. *People v. Fields*, 2012 IL 112438, ¶ 17. "A *per se* conflict of interest exists where certain facts about a defense attorney's status, by themselves, engender a disabling conflict." *Id.* That is, "a *per se* conflict arises when a defendant's attorney has a tie to a person or entity that would benefit from an unfavorable verdict for the defendant." *Id.* Our supreme court has reasoned that "the knowledge that a favorable result for the defendant would inevitably conflict with the interest of [counsel's] client, employer or self might 'subliminally' affect counsel's performance in ways difficult to detect and demonstrate." *People v. Spreitzer*, 123 Ill. 2d 1, 16 (1988). Also, such a conflict may "unnecessarily subject the attorney to 'later charges that his representation was not completely faithful.' " *Id.* at 16-17 (quoting *People v. Stoval*, 40 Ill. 2d 109, 113 (1968)).

¶ 17        A *per se* conflict exists: "(1) where defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) where defense counsel contemporaneously represents a prosecution witness; and (3) where defense

5

counsel was a former prosecutor who had been personally involved with the prosecution of defendant." *Fields*, 2012 IL 112438, ¶ 18. If a *per se* conflict is found, the defendant is not required to show that the conflict affected the attorney's actual performance. *Id.* A *per se* conflict is automatic grounds for reversal unless the defendant waives the conflict. *Id.* Such a waiver must be knowing, and defendant must be adequately informed of the existence of the conflict and its significance before the waiver may be accepted. *People v. Olinger*, 112 Ill. 2d 324, 339 (1986).

¶ 18        In this case, counsel appeared at defendant's first court date on a prior case and was not involved in the instant case when he was a prosecutor. After the first court date on defendant's prior case, a different attorney prosecuted the case. This appearance alone is not enough to create a *per se* conflict. See *People v. Franklin*, 75 Ill. 2d 173, 179-80 (1979) (an attorney's prior work as a prosecutor does not preclude the attorney from representing defendant when he was not directly involved in the current prosecution); see also *People v. Alexander*, 2019 IL App (4th) 170425, ¶ 23 (counsel did not have a conflict when he prosecuted defendant on a previous case but was not involved in the current case against defendant). Defense counsel's involvement in defendant's prior case merely created a "fairly tenuous" tie to the prosecution that would not affect his interests in representing defendant in his current case. *Spreitzer*, 123 Ill. 2d at 22. Thus, defense counsel's employment history did not create a conflict of interest.

¶ 19                                B. Ineffective Assistance of Counsel

¶ 20        Defendant next argues that he received ineffective assistance where counsel advised him that he would only have to serve 50% of his sentence, when, in fact, it was to be served at 85%. To establish a claim of ineffective assistance of counsel, defendant must meet the two-prong test in *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Under *Strickland*, a defendant must show

that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by the deficient performance. *Id.* The State concedes that counsel's performance was deficient but argues that defendant has not established prejudice. Claims of ineffectiveness of counsel may be rejected on prejudice grounds alone, "for lack of prejudice renders irrelevant the issue of counsel's performance." *People v. Coleman*, 183 Ill. 2d 366, 397-98 (1998).

¶ 21      To show prejudice, defendant must demonstrate a reasonable probability that, but for counsel's erroneous advice, he would not have proceeded to trial and would have accepted the plea offer. *People v. Hale*, 2013 IL 113140, ¶ 18. When it comes to a plea, defendant must provide objective evidence that the rejection of the offer was based on counsel's erroneous advice. *Id.* Defendant must provide more than just his "self-serving" testimony to determine whether there was prejudice. *Id.*

¶ 22      Defendant argues that, had he known he would have to serve 85% of his sentence, he would likely have accepted the State's final plea offer of 50% of 15 years' imprisonment. However, the only evidence defendant offered to support this argument was his own self-serving testimony that he would most likely have accepted the State's offer. Defendant has not provided any "independent, objective" evidence to suggest he would have accepted the plea if he was fully informed. See *id.*

¶ 23      Further, defendant could not have received the sentence the State offered because the court does not have the authority to impose a sentence that does not conform to statutory guidelines. See *People v. White*, 2011 IL 109616, ¶ 29 (finding that where a sentence fails to include mandatory conditions, it is not valid, and any plea agreement for such a sentence is void). Specifically, the parties' intent that defendant serve 50% of his sentence would not control, as the court may not impose a sentence that is not authorized by law. *Id.* ¶ 23. Moreover,

defendant rejected the State's offer and was subsequently sentenced to a 15-year term by the court. Defendant cannot show prejudice when the sentence he received was equivalent to the term he would have been required to serve if he had accepted the State's offer. Because we find that defendant has failed to show prejudice, we hold that defendant did not establish that he received ineffective assistance of counsel.

¶ 24                                      C. Sentencing

¶ 25        Defendant argues he was subjected to an improper sentence double enhancement when the court considered whether he threatened or caused harm as an aggravating factor when it was implicit in the offense. Defendant acknowledges that he did not raise this issue with the circuit court but argues it can be reviewed under the second prong of the plain error doctrine.

¶ 26        The plain error doctrine allows a reviewing court to consider an unpreserved sentencing error where: (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious that defendant was denied a fair sentencing hearing. *People v. Hall*, 195 Ill. 2d 1, 18 (2000). Defendant has the burden of persuasion under both prongs. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008). To obtain relief under this doctrine, a defendant must first show that a "clear or obvious error" occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 27        Double enhancement occurs when a single factor is used both as an element of the offense and as a basis for imposing a harsher sentence, or when the same factor is used twice to elevate the severity of the offense. *People v. Phelps*, 211 Ill. 2d 1, 11-13 (2004). Here, defendant argues that the court's statement that his actions were "extremely dangerous" and that stalking is "one of the most dangerous crimes there are" amounts to a double enhancement, because it considers that defendant threatened or caused harm to the victims—an inherent element in the offenses of aggravated arson (720 ILCS 5/20-1.1(a) (West 2018)) and aggravated stalking (*id.*

§ 12-7.4(a)(1)). However, defendant here was convicted of aggravated stalking under section 12-7.4(a)(3) of the Code rather than section 12-7.4(a)(1), and bodily harm is not an inherent element of aggravated stalking under subsection (a)(3). *Id.* § 12-7.4(a)(3). Moreover, a circuit court may consider the nature of the circumstances and the seriousness of the offense during sentencing. *People v. Hunter*, 101 Ill. App. 3d 692, 695 (1981). The court's statement that defendant's actions were "extremely dangerous" alone is insufficient to show that it improperly subjected defendant to a double enhancement. Therefore, we find no error, and thus no plain error, in the court's sentencing decision.

¶ 28                                    III. CONCLUSION

¶ 29            The judgment of the circuit court of Kankakee County is affirmed.

¶ 30            Affirmed.