2022 IL App (1st) 1688-U
No. 1-19-1688

FIRST DIVISION
March 14, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | No. 2008 CR 22966 |
| v. | ) | |
| | ) | The Honorable |
| WILLIAM BAHENA, | ) | Ursula Walowski, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Hyman and Justice Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the circuit court's denial of the defendant's petition for postconviction relief pursuant to the Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.* The defendant failed to make a substantial showing that his constitutional rights were violated due to any alleged *per se* conflict of interest on the part of his trial counsel.

¶ 2    For the following reasons, we reject Bahena's argument on appeal that his trial counsel had a *per se* conflict of interest while representing Bahena in the underlying criminal proceedings. Bahena has failed to make a substantial showing that his constitutional rights were violated, and his claims lack sufficient supporting evidence for us to disturb the findings made by the trial court

that he offered no more than speculative, conclusory statements that his defense counsel had previously been retained by Bahena's victim in a separate matter. If any prior representation occurred, it was defense counsel's prior representation of Bahena himself, which did not create a conflict of interest for counsel in defending him in the underlying matter.

¶ 3                                       BACKGROUND

¶ 4     The underlying matter concerns a criminal case in which Defendant-Appellant William Bahena, following a jury trial, was found guilty of first-degree murder and sentenced to 36 years of imprisonment followed by three years of mandatory supervised release. His conviction and sentence were affirmed on direct appeal in *People v. Bahena*, 2012 IL App (1st) 102885-U. Bahena filed a petition for postconviction relief pursuant to the Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq*, which was dismissed following a third-stage evidentiary hearing.

¶ 5     On December 10, 2008, Bahena was charged with two counts of first-degree murder relating to an altercation he had with his former girlfriend, Elva Diaz, on October 21, 2008 that resulted in her death by multiple stabbings. Attorney W. Michael Fay[1] filed an appearance on Bahena's behalf on December 23, 2008. Bahena's case proceeded to a jury trial, which began on June 30, 2010. Fay represented Bahena at trial, where Bahena testified that he had acted in self-defense; that Diaz had come at him with a knife and he had tried to get it away from her, not noticing when it entered her neck. Assistant State's Attorneys Nina Ricci and Mikki Miller appeared for the prosecution. After deliberations, the jury rested on July 1, 2010 and found Bahena guilty of first-degree murder.

¶ 6     Bahena's motion for a new trial was denied, and he filed a timely Notice of Appeal on September 16, 2010. Bahena's mother, Conchita Bahena, hired a separate attorney, not Fay, to

---

[1] At various points in the record, Fay's name is spelled "Faye" or "Fey;" for clarity, we use the spelling that Fay gave at trial, as presented in the transcript.

represent Bahena on appeal. On direct appeal, he alleged six instances of prosecutorial misconduct and three claims of ineffective assistance of counsel. We affirmed the trial court's judgment. *Bahena*, 2012 IL App (1st) 102855-U, ¶ 68.

¶ 7    On March 29, 2013, Bahena filed a *pro se* petition for postconviction relief under the Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.*, alleging that (1) he was denied his constitutional Sixth Amendment rights to a fair trial and effective assistance of counsel because his defense counsel had operated under a conflict of interest that prevented him from fully and fairly representing him; (2) he had been denied his due process and equal protection rights because Assistant State's Attorney Nina Ricci, one of the prosecutors of his case, had a personal interest in securing Bahena's conviction; (3) he was denied the assistance of effective counsel on appeal, because his appellate counsel failed to argue defense counsel Fay's ineffectiveness due to the latter's "highly prejudicial" cross-examination of the medical examiner, which undermined Bahena's defense; (4) he was denied effective assistance of appellate counsel because he failed to argue that Bahena was denied a fair trial when the prosecution was allowed to submit several "prejudicial" photos to the jury during deliberation; (5) he was denied effective assistance of appellate counsel because he failed to argue ineffective assistance of trial counsel for not using his preemptory challenges to strike several "biased and impartial" jurors; and (6) he was denied his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments when the police and prosecutors questioned his minor children without guardian consent or supervision.

¶ 8    The State moved to dismiss Bahena's petition. Following oral argument on the motion to dismiss, the circuit court allowed only two of Bahena claims to go forward to an evidentiary hearing: (1) ineffective assistance of trial counsel due to conflict of interest, and (2) prosecutorial

misconduct based upon ASA Nina Ricci's alleged personal interest in securing Bahena's conviction to go forward to an evidentiary hearing.

¶ 9     The court held an evidentiary hearing on the remaining claims on June 6, 2019, after which the court took the matter under advisement. The court appointed a public defender to represent Bahena in the postconviction proceedings. The Assistant State's Attorney representing the State in the proceedings informed the court that Fay, who had retired from the practice of law, could not be located.

¶ 10    Regarding the alleged *per se* conflict of interest, Bahena stated in his sworn affidavit and in his evidentiary hearing testimony that Fay had been friends with Diaz, and had had a social relationship with her since at least June of 2006. He further testified that Diaz hired Fay some time in 2006 or 2007[2] to be on retainer in case any civil or criminal actions were brought against her relating to her previous role as caregiver for Marie Gallo, who died in 2007. Bahena was not aware of any such actions that were ever brought against Diaz. Bahena stated that he and Diaz knew Gallo because she had been their landlord, neighbor, and friend.

¶ 11    Bahena also stated in his affidavit and testimony that Diaz hired Fay in December 2007 to represent Bahena on a warrant for failure to appear in court in a domestic battery case in which Diaz was the victim, and that Diaz had asked that the charges against him be dropped. Bahena did not provide a case number or other identifying information on the domestic battery case. He testified that his family hired Fay to represent him in the underlying murder trial. As evidence that Fay's conflict of interest resulted in ineffective assistance of counsel, Bahena stated in his affidavit that he had informed Fay prior to the trial that he had seen someone enter the building and witness

---

[2] Bahena's affidavit states that Diaz hired Fay in December of 2007 to be on retainer in case of any legal action against her as Marie Gallo's caregiver; however, he testified at the evidentiary hearing that she kept him on retainer for this purpose in 2006.

the altercation that led to Diaz's death. Bahena claimed that Fay made no efforts to locate this person, who Bahena believed could corroborate his self-defense argument at trial.[3]

¶ 12    In further support of his *per se* conflict of interest claim, Bahena included the sworn affidavit of his mother, Conchita Bahena, who wrote that Diaz came to her on December 25, 2007 and told her that Bahena had been arrested on an outstanding warrant the day before. Diaz asked Conchita to pay his bond, which she agreed to do. Conchita stated that Diaz informed her that Diaz had an attorney named Michael Fay who could represent Bahena in exchange for a retainer fee, which he had already received. She further wrote that Diaz called Fay in Conchita's presence, and arranged for him to represent Bahena. Conchita stated that she met Fay through Diaz's introduction at Bahena's bond hearing in the domestic violence case, and witnessed Fay represent her son at the hearing.

¶ 13    The circuit court found that the only evidence of Bahena's claims of Fay's conflict of interest were the self-serving affidavits attached to his petition, which it found unconvincing and insufficient to show a *per se* conflict of interest. The court further stated that there had clearly been no contemporaneous conflicting representation by Fay of both Bahena and Diaz, only the prior representation of Bahena, regardless of who paid for that representation. While Bahena was not required to show any harmful effects of defense counsel's conflict of interest in order to show a *per se* conflict of interest, the court was also unconvinced by Bahena's unsupported contention that Fay failed to investigate whether a witness had seen Bahena exercise self-defense during the altercation. After observing Bahena at the evidentiary hearing and weighing his testimony and

---

[3] There is one remaining allegation regarding Fay's prior relationship with Diaz that Bahena included in his petition for postconviction relief and references in his appellant's brief; he claimed that Fay represented Diaz in traffic court at some unspecified time prior to the 2007 domestic battery case. As this claim is found nowhere else in affidavits and testimony provided, and is not mentioned in the circuit court's order, we will not consider this argument.

demeanor, it found his statements to be conclusory, lacking in credibility, and unsupported by evidence.

¶ 14    Bahena's second remaining contention at the evidentiary hearing was that he was deprived of his due process and equal protection rights due to the prosecutorial misconduct of ASA Ricci, who prosecuted his case despite having a personal interest in securing his conviction. In support of this, he again relied on his sworn affidavit and testimony, as well as the sworn affidavit of his cousin, Fidencio Gallardo. The argument put forth in these affidavits and at the hearing was that Ricci had the power of attorney for Marie Gallo, to whom Diaz had been a caregiver prior to Gallo's death in 2007. Ricci and Diaz allegedly came into conflict because Gallo amended her will to disinherit her nieces and name Diaz's children as the inheritors of her estate, and Ricci attempted to prevent Diaz's enforcement of the new will. Bahena was unable to provide any documentation regarding either Ricci's power of attorney or Gallo's amended will. Nina Ricci testified at the evidentiary hearing that she had never had the power of attorney for Gallo, and that Ricci did not know of Bahena or Diaz prior to her involvement as prosecutor in Bahena's murder trial.

¶ 15    After hearing the testimony and reviewing the petition and affidavits, the court found Bahena's testimony and demeanor at the evidentiary hearing to lack credibility as to both of his claims. On July 30, 2019, the circuit court issued an order dismissing these two claims and denying Bahena's petition for postconviction relief because he failed to present sufficient evidence of either *per se* conflict of interest or prosecutorial misconduct.

¶ 16    On the issue of Ricci's prosecutorial misconduct, the circuit court judge concluded that the only evidence was Bahena's unsupported statements about having seen and once possessed a copy of Gallo's will with Ricci's name on it. She stated in her order that she found Ricci's testimony

that she did not know Gallo and had never been her power of attorney or done any estate planning work for Gallo to be credible, in contrast to Bahena's testimony to the contrary.

¶ 17    Regarding the conflict of interest claim, the court stated that Bahena's conclusory, unsupported statements did not warrant the postconviction relief sought, and that the testimony and affidavits of Bahena and Conchita Bahena were insufficient to substantiate his claim. The court further stated that the only evidence presented was that Fay represented Diaz or was on retainer for Diaz at some point approximately a year before representing Bahena in the domestic violence case, and then went on to represent Bahena in the underlying matter a year after that. The judge did not find the evidence sufficient to grant the petition, and dismissed this claim as well.

¶ 18    Bahena now appeals from the denial of his petition for postconviction relief. He contends that the circuit court erred in deciding that Bahena failed to make a substantial showing that Fay operated under a *per se* conflict of interest while representing Bahena at trial due to his alleged prior representation of Diaz and Diaz's hiring of Fay to represent Bahena in a prior matter. On appeal, Bahena argues that Illinois law recognizes the existence of a *per se* conflict of interest where defense counsel has a prior or contemporaneous association with the victim, and such a conflict exists whenever defense counsel represents the defendant and the victim of the defendant's crimes. He contends that the State conceded that Diaz retained Fay to represent Bahena in the domestic battery case, and therefore this fact is undisputed and the circuit court's ruling was against the manifest weight of the evidence.

¶ 19                                        ANALYSIS

¶ 20    A proceeding under the Post-Conviction Hearing Act, 725 ILCS 5/122–1 *et seq*. (West 2020), is a collateral proceeding, not an appeal from the underlying judgment. *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 52; *People v. Coleman*, 206 Ill.2d 261, 277 (2002). Its purpose is to

"allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal." *Coleman*, 206 Ill.2d at 277 (citing *People v. Griffin*, 178 Ill.2d 65, 72-3 (1997). The Act allows a defendant to challenge a conviction or sentence for violations of state or federal constitutional rights. *Wilborn*, 2011 IL App (1st) 092802, ¶50; *People v. Pendleton*, 223 Ill.2d 458, 471 (2006). To establish that the defendant is entitled to post-conviction relief, he or she bears the burden of making a substantial showing of a deprivation of constitutional rights in the underlying proceedings. *Wilborn*, 2011 IL App 1st) 092802, ¶ 50; *Coleman*, 206 Ill.2d at 277.

¶ 21    The Act creates a three-stage process for the defendant to seek relief. *People v. Parada*, 2020 IL App (1st) 161987, ¶ 16. The first stage requires only that the defendant file a petition that alleges the gist of a constitutional claim; this stage involves a low threshold, "requiring only that the petitioner plead sufficient facts to assert an arguably constitutional claim." *People v. Brown*, 236 Ill.2d 175, 184 (2010); *see also People v. Hodges*, 234 Ill.2d 1, 9 (2009). While the petition at this stage need not include a complete, detailed factual narrative, it must set forth objective facts that are capable of corroboration, with attached supporting affidavits, records, or other evidence, or explain why those facts are absent. *Wilborn*, 2011 IL App (1st) 092802, ¶ 55; *People v. Hall*, 217 Ill.2d 324, 332 (2005).

¶ 22    At the second stage of the post-conviction proceedings, the defendant bears the burden of proof of making a substantial showing of a constitutional violation. *Parada¸* 2020 IL App. (1st) at ¶ 17. The petition will not be dismissed unless "the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation." *Hall*, 217 Ill.2d at 334. At this stage, "all factual allegations that are not positively rebutted by the record are accepted as true". *Id.; see also People v. Childress*, 191 Ill.2d 168, 174 (2000). The State is

allowed to file a motion to dismiss, and if the circuit court denies the motion, the petition enters the evidentiary hearing stage. *Parada*, 2020 IL App. (1st) 161987, ¶ 17.

¶ 23    In the third stage, the circuit court holds an evidentiary hearing. As this requires the court to engage in fact-finding and credibility determinations, we shall only disturb its decision if it is manifestly erroneous. *People v. English*, 403 Ill.App.3d 121, 129 (1st Dist. 2010). Manifest error is defined as "error that is clearly evident, plain, and indisputable." *Id.* The trial court's findings of fact at an evidentiary hearing on a postconviction petition are entitled to substantial deference, and must be affirmed unless they are manifestly erroneous. *People v. Jones*, 2012 IL App (1st) 093180, ¶ 49. Alternatively, where the record shows that the facts are undisputed, the question of whether a *per se* conflict exists is a legal question we review de novo. *People v. Morales*, 209 Ill.2d 340, 345 (2004).

¶ 24    As an initial point, we note that while Bahena's Notice of Appeal indicates an appeal from the circuit court's July 30, 2019 order denying his postconviction relief on both grounds: that defense counsel operated on a *per se* conflict of interest and that ASA Ricci engaged in prosecutorial misconduct.  However, his brief on appeal presents only the conflict of interest issue. Our review is therefore limited to the circuit court's decision that Bahena failed to present sufficient evidence of a *per se* conflict of interest. *See People v. Caraga*, 2018 IL App (1st) 170123, ¶ 66 (court shall not independently engage in an analysis of issue plaintiff did not argue on appeal).

¶ 25    A criminal defendant has the right to conflict-free representation as an element of his sixth amendment right to effective assistance of counsel. *People v. Hernandez*, 231 Ill.2d 134, 142 (2008). We recognize two categories of conflicts of interest in legal representation: actual and *per se*. *People v. Peterson*, 2017 IL 120331, ¶ 102; *People v. Fields*, 2012 IL 112438, ¶ 17. A *per se* conflict of interest exists "where certain facts about a defense attorney's status, by themselves,

engender a disabling conflict." *Fields*, 2012 IL 112438, ¶ 17. Stated otherwise, such a conflict arises where the defendant's attorney "has a tie to a person or entity that would benefit from an unfavorable verdict for the defendant." *Id.; see also Hernandez*, 231 Ill.2d at 142. The *per se* rule acknowledges that the conflict-burdened attorney's understanding that a result favorable to his or her other client or association would conflict with the interests of the defendant, and this could affect the attorney's performance in various immeasurable ways. *Hernandez*, 231 Ill.2d at 143.

¶ 26    If a *per se* conflict exists, the defendant is not required to show actual prejudice, or that the attorney's "actual performance was in any way affected by the existence of the conflict." *Morales*, 209 Ill.2d at 345. A *per se* conflict of interest is automatic grounds for reversal where the defendant has not waived his or her right to conflict-free counsel. *Id.* We have identified three situations in which a *per se* conflict of interest exists: (1) where the defendant's attorney has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) where the attorney contemporaneously represents a witness for the prosecution; and (3) where the attorney was a former prosecutor who was personally involved in the prosecution of the defendant. *Id.* at 143-44; *see also People v. Lawson*, 163 Ill.2d 187, 210-11, 217-28 (1994); *People v. Moore*, 189 Ill.2d 521, 538 (2000).

¶ 27    In the underlying proceedings, Bahena's argument that his trial counsel operated under a *per se* conflict of interest while representing him was given an evidentiary hearing, having survived the first two stages of the post-conviction proceedings process. Therefore, we will only reverse the court's decision if it was made in manifest error. In its decision following the post-conviction evidentiary hearing, the circuit court found that Bahena's claim of *per se* conflict of interest was premised solely on his testimony and affidavit about Fay's alleged prior representation of Bahena and retainment by Diaz, and the testimony and affidavit of his mother, Conchita Bahena,

supporting his statements. The court found that Bahena's testimony was conclusory and unsubstantiated by any other evidence. It further found that, based on the content of his testimony and the court's opportunity to observe his demeanor at the evidentiary hearing, he lacked credibility.

¶ 28  On appeal, Bahena does not provide any additional argument for why the circuit court was incorrect, to the level of committing manifest error, in finding that he failed to prove a conflict of interest. He merely argues that there are many ways to prove a question of fact, and testimony is one such way. He further contends that the State failed to address his claim that his counsel operated under a *per se* conflict of interest, and even conceded that Diaz hired Fay to represent Bahena in a domestic battery case. The State vigorously objects to this characterization of its comments in court, and the record does not support Bahena's interpretation of the record. Bahena additionally alleges that the circuit court never made an explicit finding that Diaz's previous hiring of Fay to represent Bahena was not a *per se* conflict of interest at his criminal trial, and therefore the circuit court committed manifest error in denying his postconviction petition.

¶ 29  We agree with the circuit court that Bahena has not met his burden of proving that Faye operated under a conflict of interest because he was at some point Diaz's lawyer. We give significant deference to the circuit court's credibility determinations of the testimony presented before it at the evidentiary hearing; the circuit court judge was able to observe Bahena and Conchita as they testified and was tasked with weighing this testimony with all of other submitted evidence, and drawing reasonable inference therefrom. *See People v. Dinwiddie*, 299 Ill.App.3d 636, 644 (1st Dist. 1998). The court stated in its July 30, 2019 order ruling on Bahena's postconviction petition that Bahena attested that Diaz and Fay were friends, that Diaz had Fay on retainer in 2007, and that she hired Fay to represent Bahena in December 2007. He further testified

- 11 -

that Diaz kept Fay on retainer in case any legal action was brought against her in connection with her role as caregiver for Marie Gallo. He admitted that Fay was not representing Diaz when he represented Bahena in the 2007 domestic battery case. He stated that his family hired Fay to represent him in the underlying first-degree murder trial. Conchita testified that she was aware that Fay was Diaz's attorney and Diaz paid Fay to represent Bahena in 2007. She claimed to know of a retainer that Diaz paid Fay, but did not know whether Diaz had paid him. Conchita paid her son's bail in December 2007.

¶ 30    Having heard and weighed this testimony, the circuit court determined that Bahena failed to present sufficient evidence that Fay operated under a *per se* conflict of interest in representing Bahena in the underlying criminal matter. It based its ruling on a finding that Bahena lacked credibility; his evidence consisted solely of his and Conchita's conclusory testimony, as well as affidavits from both individuals, and was not supported by any documentation or other evidence. The judge heard the testimony offered by Bahena and his mother on this subject, included reference to that testimony in the order denying his postconviction relief, and held that the evidence offered was insufficient to show the existence of a *per se* conflict of interest. The face of the order makes it obvious that the circuit court was aware of and considered all evidence that Bahena submitted in support of his request for postconviction relief regarding his allegations of *per se* conflict of interest. While we do not find any reason to disrupt the circuit court's credibility determinations made during the third-stage evidentiary hearing, we nevertheless further consider Bahena's explanation of the alleged conflict of interest, to establish that Fay's representation of Bahena in the underlying matter and in a prior separate criminal matter does not amount to a *per se* conflict of interest.

¶ 31 Bahena primarily relies on two cases to argue that Fay's prior representation of the victim in Bahena's criminal trial created a *per se* conflict of interest in the underlying matter. The first is *People v. Hernandez*, 231 Ill.2d 134, 142 (2008), in which our supreme court held that defense counsel's representation of both the defendant and the alleged victim constituted a *per se* conflict of interest. *Id.* at 152-53. The defendant, Hernandez, had retained an attorney to defend him on charges of solicitation of murder for hire; unbeknownst to the defendant, the attorney had previously been retained by the alleged target of the murder for hire, Cepeda, to defend him in connection with an unlawful use of a weapon charge. *Id.* at 138-39. The latter representation ended approximately two years before the attorney's representation of Hernandez began, when Cepeda failed to appear in court and allegedly fled the country, ceasing contact with his attorney. *Id.* at 139. However, the attorney remained Cepeda's attorney of record. *Id.* At Hernandez's trial, Cepeda was on the State's list of potential witnesses. Hernandez filed a postconviction petition alleging that he learned of his defense counsel's dual representation following his trial, and an evidentiary hearing on the petition revealed that his attorney was aware that he remained Cepeda's counsel and would continue representing him if he were apprehended. *Id.* at 139-40. Neither Hernandez nor the trial court were made aware of the dual representation, although the prosecutor and defense counsel himself knew of the conflict. *Id*.

¶ 32 In reversing the circuit and appellate courts' rulings that no *per se* conflict of interest existed, the supreme court highlighted that defense counsel still considered himself to represent Cepeda and was obligated to act on his behalf if Cepeda were arrested on the bond warrant issued after he failed to appear in court. *Id.* at 145-46. It also noted that in Cepeda's criminal proceedings for unlawful use of a weapon, Hernandez had been Cepeda's victim—the facts of that trial included Cepeda kidnapping Hernandez and threatening his family; the court found that this deepened the

conflicting nature of the dual representation. *Id.* at 150. Finally, the supreme court declined to apply a case-by-case application of the facts to an analysis of *per se* conflict of interest, stating that this would extinguish the *per se* conflict rule entirely, and therefore it did not need to inquire into whether the dual representation was active or contemporaneous, once it had been established that the attorney represented the defendant and the alleged victim of the defendant's crime. *Id.* at 151-52.

¶ 33    We noted in *People v. Cleveland* that the court in *Hernandez* reviewed and referenced the testimony presented at the evidentiary hearing, as well as the supporting evidence, including defense counsel's affidavit. 2012 IL App (1st) 101631, ¶ 43 (noting that the lack of any supporting affidavits in *Cleveland* cut against the defendant's request for an evidentiary hearing on his postconviction petition). While in the present matter, the circuit court did allow for Bahena's petition to proceed to an evidentiary hearing on the conflict of interest, the court did note that Bahena's and Conchita's testimony regarding Fay and Diaz's prior attorney-client relationship was unsupported by affidavits, retainer agreements, evidence of payments made by Diaz to Fay, or other documentation. Fay also did not testify, which distinguishes this case from *Hernandez*, where defense counsel testified at the evidentiary hearing and submitted an affidavit admitting his conflicting representation. Most importantly, however, the present matter is distinguishable from Bahena's cited cases because here, the only prior representation was of Bahena himself—the same defendant as in the underlying matter.

¶ 34    Our supreme court recently modified the ruling in *Hernandez* in its decision in *People v. Yost*, 2021 IL 126187[4] (No *per se* conflict of interest existed where defense counsel's prior representation of the victim was not contemporaneous and concluded before the defendant's trial.)

_____

[4] This opinion has not been released for publication at this time, and we note that it may be revised or withdrawn at any time prior to publication. However, the revocation of this opinion would not change our holding in this case.

This case involved the defendant's fatal stabbing of his former girlfriend, and his representation at trial in 2016 by a public defender who had previously represented the victim in a 2008 criminal matter, also in his capacity as a public defender, although he testified that he did not recall defending her. *Id.* ¶¶ 3, 25-26.

¶ 35    The court in *Hernandez* compared the case to two prior *per se* conflict of interest cases, *Yost* and *People v. Hillenbrand* (121 Ill.2d 537 (1988) (defense counsel who previously represented the victim's parents and assisted the victim in tax matters did not operate under a conflict of interest where his duties to the victim concluded long after his representation of the defendant in the criminal trial)). It distinguished *Hernandez* in noting that Hernandez's defense counsel was still the counsel on record for the victim at the time of Hernandez's trial, and the attorney knew himself to be the victim's defense counsel while representing Hernandez. *Yost*, 2021 IL 126187, ¶ 60; *see also Hernandez*, 231 Ill.2d at 139. The court further underscored the importance of this point in noting that the conflicting representation need not be "active"—that the conflict of interest still existed despite the fact that the attorney in *Hernandez* had no ongoing relationship or significant contact with the victim for five years by the time of Hernandez's trial, and the victim was not called as a witness. *Yost*, 2021 IL 126187, ¶¶ 51, 54; *see also Hernandez*, 231 Ill.2d at 151-53. The supreme court stated in *Yost* that *Hillenbrand* and *Hernandez* were not in conflict with one another, but were factually distinct cases, the former involving prior conflicting representation that concluded long before the same attorney represented the defendant, and the latter involving ongoing representation of the victim, of which defense counsel knew when he represented the defendant. *Yost*, 2021 IL 126187, ¶ 60.

¶ 36    The *Yost* court concluded its discussion of *Hernandez* by modifying the holding to state that a *per se* conflict based on defense counsel's representation of the victim exists "only when that

representation is contemporaneous with counsel's representation of the criminal defendant." *Id.* ¶ 65. It clarified that there are three categories of circumstances in which our caselaw recognizes a *per se* conflict of interest: "(1) when defense counsel has a contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) when defense counsel contemporaneously represents a prosecution witness; and (3) when defense counsel was a former prosecutor who was personally involved in the prosecution of the defendant." *Id.* ¶ 66. Bahena's argument rests predominantly on Fay having a prior relationship with Diaz before he acted as defense counsel to Bahena, placing Bahena's own version of the facts outside the scope of a *per se* conflict of intertest if we follow the *Yost* court's definition.

¶ 37    Finally, Bahena relies on *People v. Carr* to make his case based on testimony and affidavits that Diaz paid Fay to represent Bahena in a domestic battery case. In *Carr*, we found a *per se* conflict of interest existed where defense counsel failed to disclose that the victim of defendant Carr's domestic battery case had, without Carr's knowledge, hired defense counsel to represent Carr. 2020 IL App (1st) 171484, ¶¶ 18-19. At the evidentiary hearing, Carr produced several documents supporting his postconviction argument that the victim paid defense counsel to represent Carr, including an a representation agreement stating that defense counsel and the victim were entering into an agreement for the former to represent Carr and establishing the amount due to defense counsel from the victim for this representation, a letter from defense counsel to Carr that appeared to be signed by both individuals that documented the victim's payments to defense counsel, a letter to Carr from DePaul University College of Law legal clinic stating the same, and the affidavit of Carr's mother, who stated that she witnessed defense counsel advise the victim on Carr's case and work out payment details with her. *Id.* ¶¶ 12-16. We held in *Carr* that ties other than an attorney-client relationship, in which the attorney actually represented the individual

creating the conflict, could create a *per se* conflict of interest—in that case, it was sufficient to show that the victim paid defense counsel to represent Carr. *Id.* ¶¶ 31-32.

¶ 38    Here, if we were to give credibility to Bahena's unsubstantiated factual assertions, there is no evidence that Fay had a contemporaneous association with Diaz, the prosecution, or an entity assisting the prosecution, contemporaneously represented a prosecution witness, or was a former prosecutor personally involved in the prosecution of Bahena. There is no evidence that Fay had an attorney-client relationship with Diaz. Unlike the documented prior representation in *Carr*, Bahena never produced any retainer agreement, proof of payment, court records, or other evidence that Fay ever represented anyone—Diaz or Bahena—in 2007. Furthermore, regarding the holding in *Carr*, defense counsel in that case was hired by the victim to represent the defendant in the criminal matter at issue, and was concurrently being paid by the victim while Carr's trial was taking place. Here, Bahena contends—with no substantiating evidence—that Diaz hired Fay to represent him in a separate, prior case.

¶ 39    The other alleged basis for the conflict of interest is Diaz's retention of Fay in 2007 to represent her in any potential dispute regarding her employment as Marie Gallo's caregiver and Gallo's amending her will in favor of Diaz's children. Bahena has not sufficiently shown that the former representation, which is unrelated to the underlying criminal matter, occurred prior to this matter, and did not result in Fay representing Diaz in any criminal or civil action, constitutes a *per se* conflict of interest. And Bahena has not shown that any litigation or any proceedings whatsoever occurred over the latter. Furthermore, he has not shown any evidence that Diaz had retained Fay for such eventuality. The facts presented here are far from the contemporaneous conflicting representation that existed in *Hernandez.* There is no basis for us to disturb the circuit court's finding that Bahena failed to meet his burden of proving a *per se* conflict of interest.

¶ 40                                           CONCLUSION

¶ 41     For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 42     Affirmed.