NOTICE

Decision filed 08/11/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 200286-U

NO. 5-20-0286

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 18-CF-23 |
| | ) | |
| TARRIEL HUDSON, | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Welch and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Where the record confirms prior defense counsel did not have a *per se* conflict of interest, evidence supported revoking defendant's probation, and no argument was presented to this court regarding sentencing, defendant's appointed counsel on appeal is granted leave to withdraw, and the judgment of the circuit court is affirmed.

¶ 2    Defendant, Tarriel Hudson, appeals the denial of his motion to vacate an order revoking his probation and sentencing him to 78 months' imprisonment for domestic battery. Defendant's appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), concluded this appeal lacks merit. Accordingly, OSAD filed a motion to withdraw as counsel for defendant (see *Anders v. California*, 386 U.S. 738 (1967)) along with a brief in support of the motion. OSAD provided defendant with a copy of its *Anders* motion and brief. Defendant did not file a response. Having read OSAD's *Anders* motion and brief, and examined the record on appeal, we too

1

conclude this appeal lacks merit, and no potential ground for appeal exists. Accordingly, we grant OSAD leave to withdraw and affirm the judgment of the circuit court.

¶ 3                                    BACKGROUND

¶ 4     On January 19, 2018, defendant was charged by information with domestic battery in violation of section 12-3.2(a)(2) of the Criminal Code of 2012 (720 ILCS 5/12-3.2(a)(2) (West 2018)). The information also noted four previous convictions for domestic battery in Jackson County. On February 6, 2018, defendant appeared with his attorney, Timothy Ting, and entered a plea of guilty to domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2018)) as a Class 2 felony, in exchange for a sentence of 24 months' probation with various conditions, including an alcohol evaluation. Defendant also admitted the allegations of a pending petition to revoke his probation in case No. 15-CF-511 (2015 case).

¶ 5     On August 15, 2018, the State subsequently filed a petition to revoke defendant's probation, alleging that he failed to comply with various conditions thereof. Over the State's objection the circuit court agreed to continue probation, noting defendant was "making progress."

¶ 6     On April 10, 2019, the State filed an amended petition to revoke defendant's probation alleging that defendant violated the trial court's order for probation in that defendant failed to complete domestic violence counseling, complete alcohol and substance abuse treatment, pay various fines and fees, report to his probation officer, complete required drug testing, and comply with the requirement that he not violate any criminal statute of any jurisdiction, noting that defendant was charged with resisting a peace officer and criminal trespass to state-supported property in two new cases.

¶ 7     The hearing on the State's petition to revoke probation was held on May 20, 2019. At that time, Barbara McPhail, defendant's probation officer, testified that defendant failed to complete

2

treatment at Centerstone for substance abuse or make payments towards his fines. She further testified that although defendant usually reported to probation as required, he missed twice, once when he was ill and once when he lacked transportation. Additionally, McPhail testified that defendant had not completed recommended counseling and tested positive for THC in October and November 2018.

¶ 8     Defendant testified that he stopped reporting to probation after he was diagnosed with lung cancer and became depressed. He stated that he was threatened that if he did not take the 24 months' probation offered he would do 3 years in the penitentiary for the other case. He further proclaimed his innocence despite his guilty plea. The court found the State proved defendant failed to complete substance-abuse treatment, report to probation, complete counseling, and committed two criminal offenses. Thereafter, the trial court revoked defendant's probation. Sentencing was scheduled for August 23, 2019.

¶ 9     On or about July 9, 2019, defendant sent correspondence to the Attorney Registration and Disciplinary Commission (ARDC) complaining that attorney Ting, who was still representing defendant, had previously represented Jessica Dixon, the victim in a prior domestic battery case. The conflict involved three different cases related to charges filed in 2012, 2015, and 2018. In 2012, defendant pled guilty to battering Jessica Dixon. Ting represented Dixon, who, after recanting her claim of battery against defendant, was charged with filing a false police report. In 2015, defendant was again charged with battery against Dixon. At that time, defendant was represented by attorney Moyer and defendant pled guilty to that offense and was sentenced to probation. On January 19, 2018, defendant was charged with domestic battery against Shaneedra Cole, and Ting was assigned to represent defendant on this case as well as the State's petition to revoke defendant's probation related to the 2015 case involving Dixon. When the State filed a

3

petition to revoke defendant's probation related to the 2018 case, Ting was again appointed to represent defendant.

¶ 10     After defendant filed the claim with the ARDC, Ting moved to withdraw, and the motion was subsequently granted. On August 5, 2019, Celeste Korando was appointed to represent defendant at the sentencing hearing. At the August 23, 2019, sentencing hearing Korando explained the conflict to the court. Additionally, McPhail testified that defendant had not complied with his probation conditions, and she did not expect that to change. She acknowledged on cross-examination that there were periods during which defendant complied with his probation conditions.

¶ 11     In requesting a maximum extended-term sentence of 14 years, the State argued that defendant had several prior convictions and prison disciplinary tickets. It further argued that defendant's offense "threatened serious harm." Korando argued that defendant's prior convictions did not make him eligible for an extended-term sentence, a point which the State conceded and then asked for seven years' imprisonment. In allocution, defendant continued to proclaim his innocence, claiming that Dixon had provided a notarized statement recanting her allegations related to the 2015 case and that his attorney told him it did not matter, and he should take the 24-month plea bargain.

¶ 12     When imposing the sentence, the circuit court considered the presentence investigation report and addendum, the testimony at the petition to revoke, and the "arguments and recommendations in this case ***, including factors in aggravation, how they should or should not apply in this particular situation, as well as factors in mitigation under the relevant statutory section." Thereafter, the court sentenced defendant to 78 months' imprisonment to be followed by 4 years of mandatory supervised release (MSR) and admonished defendant of his appeal rights.

¶ 13    On September 18, 2019, defendant appealed from the August 23, 2019, judgment based on the conflict of interest between Ting and his representation of the victim, Dixon, in one of defendant's prior cases. Defendant's appeal was also based on Ting's refusal to present evidence in defendant's 2018 case, alleged coercion in pleading guilty, and admission of the conflict to the ARDC. On September 19, 2019, defendant's counsel moved to strike the appeal and filed a motion to vacate the judgment and reconsider sentence on the same basis. On September 26, 2019, the trial court granted the motion to strike the appeal.

¶ 14    The hearing on the motion to vacate the judgment and reconsider sentence was held on October 22, 2019. At that time, defendant's counsel argued that defendant's sixth amendment right to counsel included the right to conflict-free representation pursuant to *People v. Hernandez*, 231 Ill. 2d 134 (2008), as well as other cited cases. Defense counsel argued that since there was no question Ting had a conflict when defendant pled guilty on February 6, 2018, the original judgment and the judgment revoking defendant's probation should be vacated. In response, the State called Ting as a witness. Ting testified that he had received a letter from the ARDC about defendant's complaint to which he responded. He was later advised that no investigation was required and testified that he considered the matter resolved. He explained his representation of Dixon in 2012 and stated that when he was appointed to represent defendant on the 2015 probation-revocation petition and the new 2018 charges, Ting's office "missed" his former representation of Dixon. Ting testified that no possibility of antagonistic defenses existed, as the 2018 revocation was based solely on "technical" matters.

¶ 15    Ting and defendant agreed that Ting likely told defendant that if he did not accept the offer of two years' probation on the 2018 case, he would likely be sentenced to three years in prison on

the earlier 2015 case. Defendant insisted that his plea in 2018 had "everything to do" with Dixon. The court denied the motion to vacate and reconsider the sentence. Defendant appealed.

¶ 16                                    ANALYSIS

¶ 17    OSAD suggests three potential issues defendant could raise but concludes none of them has arguable merit. We agree.

¶ 18    OSAD first contends that there is no arguable claim that attorney Ting labored under a conflict of interest. The sixth amendment right to the effective assistance of counsel includes the right to conflict-free counsel. *People v. Green*, 2020 IL 125005, ¶ 20. "Generally, a *per se* conflict arises when defense counsel has a connection to a person or entity that would benefit from an unfavorable verdict for the defendant." *People v. Yost*, 2021 IL 126187, ¶ 39. A *per se* conflict requires automatic reversal of the conviction unless the defendant waives the conflict. *Green*, 2020 IL 125005, ¶ 24.

¶ 19    Illinois courts recognize three situations that create a *per se* conflict: "(1) where defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) where defense counsel contemporaneously represents a prosecution witness; and (3) where defense counsel was a former prosecutor who had been personally involved in the prosecution of defendant." *People v. Taylor*, 237 Ill. 2d 356, 374 (2010). However, in *Yost*, the court narrowed the first category, holding that a *per se* conflict of interest arises only where "defense counsel has a contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution." *Yost*, 2021 IL 126187, ¶ 66.

¶ 20    As OSAD initially points out, defendant may not challenge the initial guilty plea in this proceeding. See *In re T.E.*, 85 Ill. 2d 326, 333 (1981) (where no direct appeal was taken from the original probation order, a court may not collaterally review that initial order in an appeal from the

6

revocation of that probation). Although defendant may still appeal the revocation of his probation, during which Ting still represented him, under *Yost* no *per se* conflict existed. Ting's brief representation of Dixon ended before defendant pled guilty in the 2018 case—in which Dixon was not the victim—and before the revocation petition was filed in the 2015 case. Ting therefore did not have a contemporaneous association with Dixon when he represented defendant.

¶ 21     Even in the absence of a *per se* conflict of interest "a defendant may still establish a violation of his right to effective assistance of counsel by showing an actual conflict of interest that adversely affected his counsel's performance." *People v. Hernandez*, 231 Ill. 2d 134, 144 (2008). "To do so, he must show 'some specific defect in his counsel's strategy, tactics, or decision making attributable to [a] conflict.' " *People v. Morales*, 209 Ill. 2d 340, 349 (2004) (quoting *People v. Spreitzer*, 123 Ill. 2d 1, 18 (1988)).

¶ 22     Here, the motion to vacate alleged only a *per se* conflict of interest and alleged no facts showing an actual conflict. Even if defendant's motion to vacate could be construed as alleging an actual conflict of interest, it is unclear from the record how Ting's representation of Dixon in 2012 could have influenced his representation of defendant in 2018, especially given that the petition to revoke in the 2015 case alleged easily provable violations of defendant's probationary conditions. Defendant argued that Ting urged him to accept the plea agreement to avoid being sentenced to prison if the 2015 probation were revoked. Ting admitted as much. But that does not prove Ting had a conflict of interest as Dixon derived no apparent benefit from defendant continuing on probation.

¶ 23     The second potential issue is whether the evidence was sufficient for the circuit court to find that defendant violated his probation. The State must prove a violation of probation by a preponderance of the evidence. 730 ILCS 5/5-6-4(c) (West 2018); *People v. Colon*, 225 Ill. 2d

7

125, 156-57 (2007). Here, McPhail testified that defendant sometimes failed to report to her and did not provide evidence that he had completed alcohol and substance abuse treatment. Moreover, uncontested evidence established that defendant had been convicted of an offense—criminal trespass to state-supported property. Thus, defendant cannot dispute that sufficient evidence supported the circuit court's decision to revoke his probation.

¶ 24    The final potential issue claimed by OSAD was whether any argument could be raised to challenge defendant's sentence as excessive or otherwise erroneous. Here, citing *People v. Morger*, 2019 IL 123643, ¶¶ 14-15, OSAD alleged that since defendant completed his term of incarceration, any challenge to the length of his sentence would be moot.

¶ 25    Taking judicial notice of defendant's incarceration status pursuant to the Illinois Department of Corrections website (https://www2.illinois.gov/idoc/Offender/Pages/Inmate Search.aspx (last visited July 26, 2022)), we note defendant's parole date of March 16, 2022, and projected discharge date of May 3, 2023. However, as noted by OSAD, defendant remains within the four-year period of MSR imposed by the court. When a defendant is released but remains on MSR, the length of the original sentence affects how long a defendant could be reincarcerated for a violation of the condition of release. *People v. Jackson*, 199 Ill. 2d 286, 294 (2002). Contrary to *Morger*, defendant's sentence is not complete as he remains on MSR. As such, we disagree that any challenge to the length of defendant's sentence is moot.

¶ 26    With regard to the potential underlying sentence issue, in support of its claim that no argument could be raised, OSAD's sole argument was that defendant's 78 months sentence fell within the statutory range for the Class 2 offense. We agree the sentence falls within the statutory range and further note that while defendant moved for reconsideration of his sentence, no error was alleged regarding the length of the sentence, the trial court's considerations in determining the

sentence, or any other potential error related to the sentencing. As such, we find defendant's potential contentions of error related to the length of his sentence, or any error related thereto, were forfeited for purposes of appeal. *People v. Hammons*, 2018 IL App (4th) 160385, ¶ 14.

¶ 27    Consequently, we may only review any contentions of error related to the sentencing if the narrow and limited exception provided by the plain-error doctrine is established. *People v. Bannister*, 232 Ill. 2d 52, 65 (2008). Under the doctrine, a defendant must first show that a clear or obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Thereafter, in the context of sentencing, a defendant must show either that (1) the evidence at the sentencing hearing was closely balanced or (2) the error was so egregious as to deny the defendant a fair sentencing hearing. *People v. Hall*, 195 Ill. 2d 1, 18 (2000). Under either prong, defendant bears the burden of persuasion. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008). When a defendant fails to present an argument on how either of the two prongs of plain error is satisfied, he forfeits plain-error review. *People v. Nieves*, 192 Ill. 2d 487, 502-03 (2000). As no plain-error argument was presented, we find the argument was forfeited.

¶ 28                                          CONCLUSION

¶ 29    For the foregoing reasons, we grant OSAD's *Anders* motion and affirm the judgment of the circuit court.

¶ 30    Motion granted; judgment affirmed.

9